**TOLEDO HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 8194.**

United States District Court
N. D. Ohio, W. D.
March 27, 1962.

Marshall, Melhorn, Bloch & Belt, Arnold Bunge, Sr., James F. Kennedy, Jr., Toledo, Ohio, for plaintiff.

Marvin Haiken, Trial Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

KLOEB, District Judge.

This is an action for the recovery of income taxes paid for the years 1952, 1953 and 1954.

In the complaint filed April 10, 1959, plaintiff sought to recover the sum of $35,403.05, with interest. After the commencement of the action, and on April 1, 1960, plaintiff filed an amended complaint seeking recovery of $121,548.79, based on a claim of larger allowable additions to its bad debt reserve than originally claimed.

The case was tried to the Court on October 2, 1961, and is now before the Court on the evidence, a stipulation of facts filed April 24, 1961, a supplemental stipulation of facts filed October 2, 1961, and on the oral arguments made at the conclusion of the trial and briefs filed thereafter.

We shall not attempt a statement of the facts or a review of the background of the plaintiff-taxpayer for the reason that these matters are fully set out in the stipulation of facts, the transcript of the evidence, and the briefs of the parties involved.

The questions presented are:

1. Whether expenses incurred by the plaintiff in resurfacing its parking lot represent non-deductible outlays or deductible expenses;

2. Whether Christmas gifts made by the taxpayer to its employees constitute deductible compensation for

services rendered or non-deductible gifts;

3. Whether plaintiff is entitled to a deduction for additions made to a reserve for losses in the years 1952, 1953 and 1954.

The statutes and regulations involved are fully set out in the briefs, and we shall not here attempt to restate all of them. However, the principal provisions of the law with which we are concerned with regard to question No. 3 are set forth in Section 23(k) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(k) (1), and in Ohio General Code Section 9671, R.C. § 1151.50. The applicable portions of Sec. 23(k) are as follows:

" § 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(k) *Bad debts.*

"(1) *General rule.* Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; \* \* \*.

"In the case of a \* \* \* building and loan association, \* \* \* the reasonable addition to a reserve for bad debts shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under this sentence shall not be greater than \* \* \* (B) the amount by which 12 per centum of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year."

Ohio General Code, Sec. 9671. THE AMOUNT TO BE SET ASIDE.

"The amount to be set aside to the reserve fund of a building and loan association for the payment of contingent losses shall be determined by the board of directors of such association, but in every permanent or perpetual association, at least five per cent of the net earnings shall be set aside each year to such fund until it reaches at least ten per cent of the total assets. All losses shall be paid out of such fund until it is exhausted. When the amount in such fund falls below ten per cent of the assets, it shall be replenished by annual appropriations of at least five per cent of the net earnings until it again reaches such amount. If the reserve fund of an association which has deposits greater than the aggregate amount of its stock credits, reserve, and undivided profits exceeds at any time three per cent of the total assets of the association, and thereafter declines to three per cent of such assets, the association shall pay no dividends on its stock so long as such reserve fund amounts to less than three per cent of such total assets."

*Question 1.* Whether expenses incurred by the taxpayer in resurfacing its parking lot represent non-deductible capital outlays or deductible expenses.

In the year 1954, plaintiff expended the sum of $3,261.75 for repairs to its parking lot that served its customers and employees. $1,354.44 of this amount was debited to the reserve for depreciation account and the remainder was expensed.

We have concluded, from a study of the record, the briefs, and the citations, that the entire amount should have been expensed and deducted from income for tax purposes. The position of defendant is too rigid and too technical. The things that were done to the parking lot in this year of 1954 were designed merely to restore the parking lot to its original condition after its construction in the

year 1951. It appears that, from 1951 to 1954, certain sections in the parking lot gave way because they had originally been constructed over excavations and in time, because of the unstable earth over which the asphalt was laid, these portions sank and caused water and snow and ice to accumulate thereon. We regard the repairs to have been a necessary expense and conclude that they were not of a capital nature.

■ *Question 2.* Whether Christmas gifts made by the taxpayer to its employees constitute deductible compensation for services rendered or non-deductible gifts.

We conclude that these items should be properly classified as non-deductible gifts, just as plaintiff originally classified them.

These gifts were authorized by Resolutions of the Board of Directors, which were thereafter ratified by the shareholders, and plaintiff charged these gifts on its books against undivided profits and not against operations as compensation for services rendered. In its tax returns for the years 1952 and 1953, plaintiff did not deduct the value of these gifts as business expenses. In preparing Forms W–2 for the recipients of the gifts in 1952 and 1953, plaintiff did not include the amounts of the gifts as wages. The employees did not include the gifts as income in their individual tax returns. Beginning in 1954, plaintiff's procedure was changed from the procedure theretofore employed. Therefore, the gifts by plaintiff to its employees at Christmas in 1954 are not in issue. We conclude that the decision of the Commissioner of Internal Revenue denying plaintiff a deduction for the years

1952 and 1953, and a certain sum in 1954, was correct and should be sustained.

*Question 3.* Whether plaintiff is entitled to a deduction for additions made to a reserve for losses in the years 1952, 1953 and 1954.

On its 1952 income tax return, plaintiff, being a savings and loan association newly taxed by the Federal Government, made a notation that it elected to charge off any bad debts if and when they might occur and not use the reserve method.

Actually, no bad debt losses were charged to plaintiff's reserve account or claimed as tax deductions during any of the years in question. On the other hand, plaintiff did follow a policy of making additions to its reserve and it did so in accordance with the provisions of the Ohio Code hereinbefore quoted.

■ We believe, from a study of the record, that the election initially made by plaintiff on its 1952 tax return was done in error, and that it should not be held to the election because of this notation and thereby foreclosed from pursuing its claim for deductions for reasonable additions to its reserve. In other words, plaintiff should be entitled to use the reserve method for the years in question.

During the years in question, plaintiff made additions to its reserve fund on the basis of the demands of General Code, Section 9671, as follows:

1952 — $15,372.36
1953 — $19,308.96
1954 — $16,339.00.

During these years, plaintiff's reserves, in relation to its deposits and withdrawable accounts, were as follows:

| Year | Total deposits and withdrawable accounts as of close of year | 12% of withdrawable accounts at close of year | Surplus, undivided profits and reserves at beginning of year |
|---|---|---|---|
| 1952 | $20,806,859.83 | $2,496,823.18 | $2,889,792.63 |
| 1953 | 22,115,083.49 | 2,653,810.01 | 3,141,133.46 |
| 1954 | 23,301,093.09 | 2,796,131.17 | 3,339,130.14. |

In its income tax returns for the years in question, plaintiff sought to deduct the additions made to its reserves under Ohio law in determining taxable income. In each of these years no amounts were charged against plaintiff's reserves for bad debt losses. Plaintiff's claims for refund filed with the Commissioner of Internal Revenue were based on the claim that it was entitled to certain deductions for additions to a reserve because they had been made pursuant to Ohio law. With the filing of the amended complaint, plaintiff contended that it was entitled to deduct larger amounts on a different theory, to wit, that it could proceed on the theory that it had a zero balance in its bad debt reserve as of December 31, 1951, and that, therefore, larger sums were involved than were involved if computed solely under the requirements of the Ohio Code.

We believe that the grounds in advancing the claim for the increased sums are different grounds than those pursued in connection with the claim for refund filed with the Commissioner and that, therefore, the increased sums as claimed by plaintiff in its amended complaint, being at variance with the original claims made before the Commissioner, should be disallowed.

We come then to the question whether plaintiff is entitled to a deduction for additions made to a reserve for losses in the years in question and as requested in its claim filed with the Commissioner and disallowed by him. This requires consideration of Section 23(k) (1).

The part of this section stressed by plaintiff reads as follows:

"In the case of a * * * building and loan association, * * * the reasonable addition to a reserve for bad debts shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951."

The part of the section upon which defendant relies reads as follows:

"* * *; except that the amount determined by the taxpayer under this sentence shall not be greater than * * * (B) the amount by which 12 per centum of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year."

Plaintiff apparently takes the position that the 12 percent formula applies only to "solvency" reserves, which are different from "bad debt" reserves, and that, with respect to the latter, it is to be treated as if it had no bad debt reserves as of January 1, 1952.

The defendant contends that, under the 12 percent formula, Congress intended that the reserves of a building and loan association should be considered as bad debt reserves as of January 1, 1952, and that it was the primary purpose of the Congress, in enacting the 20 percent reserve clause, to protect reserves already set up.

We believe that the plaintiff unduly stresses the "due regard" clause to the exclusion of consideration of the 12 percent formula as set up by Congress.

We are required to discern the intent of Congress in the enactment of this section. The Congress was engaged in an attempt to levy taxes for the first time against building and loan associations and, in so doing, it was solicitous to see that the existing reserves of the associations be not endangered while in the process of levying taxes. The Congressional debates appear to support this conclusion.

In the case of South Side Building and Loan Association, a corporation v. Hooks, District Director of Internal Revenue, 188 F.Supp. 652, we said, beginning at page 653:

"It is undisputed that, during the years in question, the taxpayer's surplus, undivided profits and reserves at the beginning of each calendar year exceeded 12 percentum of the withdrawable accounts at the close of each year.

"There is no showing on the part of the taxpayer of a loss experience warranting the deductions claimed.

\* \* \* \* \* \*

"(p. 654) We conclude that the taxpayer is not entitled to a deduction for the additions made to its loss reserve."

The same conclusion is in order here.

The position of the Government in refusing a deduction for additions made to a reserve for losses for the years 1952, 1953 and 1954 should be and is sustained.

Defendant may, within twenty (20) days, prepare and lodge with the Court findings of fact and conclusions of law drawn in accordance with this memorandum opinion. Plaintiff may file its exceptions and suggested additions within twenty (20) days thereafter.

An order may be drawn accordingly.