United-American Savings & Loan Association of Pittsburgh, Pa. v. Commissioner.
United-American Sav. & Loan Asso. v. Commissioner
Docket No. 6597-66.
United States Tax Court
T.C. Memo 1968-91; 1968 Tax Ct. Memo LEXIS 207; 27 T.C.M. (CCH) 421; T.C.M. (RIA) 68091; May 20, 1968. Filed Michael W. Huron, Grant Bldg., Pittsburgh, *208 Pa., for the petitioner. D. Alden Newland, for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $1,290.57 in the petitioner's income tax for 1963. The only allegation of error is that the Commissioner erred in disallowing a deduction of $4,228.46 for an addition to its reserve for bad debts. Findings of Fact The petitioner was a Pennsylvania corporation doing business as a domestic building and loan association at 1812 E. Carson Street, Pittsburgh, Pennsylvania at the time of filing the petition. It filed its corporate income tax return for 1963 on March 11, 1964 with the director of internal revenue for the Pittsburgh district. The petitioner was, during 1963, a member of the Federal Home Bank System and was insured by the Federal Savings and Loan Insurance Corporation. The income shown on the petitioner's books of account for the year 1963 was $7,047.44. 422 Petitioner on its income tax return for the year 1963 claimed a deduction of $4,228.46 for an addition to reserve for bad debts equal to sixty percent (60%) of its income. The $4,228.46 claimed on its 1963 return as an addition to reserve *209 for bad debts, plus the taxable income reported on the return in the amount of $2,818.98, was credited to, and increased by $7,047.44, an account on the petitioner's regular books of account entitled "Contingent Reserve Account" (Federal Insurance Reserve). The petitioner credited the "Contingent Reserve Account" (Federal Insurance Reserve) with the following amounts during the taxable year 1963, $1,458.63 on June 30 and $5,588.81 on December 31 for a total credit or increase of $7,047.44. The Commissioner, in determining the deficiency, disallowed as a deduction "Bad Debts $4,228.46" and explained: It is determined that the deduction for bad debts on the reserve method in the amount of $4,228.46, claimed in the 1963 income tax return, is unallowable. The amount claimed was not reflected on the regular books of account as required by sections 166(c) and 593 of the Internal Revenue Code of 1954 and the regulations promulgated thereunder. The "Rules and Regulations for Insurance of Accounts" of the Federal Savings and Loan Insurance Corporation, section 563.11, effective for the year 1963, provide that: SETTING UP, DESIGNATION, AND PURPOSE OF FEDERAL *210 INSURANCE RESERVE: - Each insured institution shall set up a Federal insurance reserve account which shall be used solely for the purpose of absorbing losses. No insured institution may pay dividends from its Federal insurance reserve account. Any insured state-chartered institution may by resolution of its board of directors or by other appropriate corporate action designate as its Federal insurance reserve account any reserve account which under the provisions of state law is established for the sole purpose of absorbing losses. Evidence of such action shall be filed with the Corporation. With the prior written approval of the Corporation, any other reserve account which by specific and adequate corporate action of an insured institution is made subject to charges for losses only, may be designated as its Federal insurance reserve account. The general reserves of Federal savings and loan associations operating under Charter K, Charter K (rev.) or Charter N are deemed to meet the requirements of this section. Throughout the year 1963 petitioner was a member of the United States Savings and Loan League, a non-governmental organization. That organization prepared and mailed to its *211 members copies of a "Special Tax Bulletin" dated October 24, 1962. This bulletin states that "all associations as of the close of December 31, 1962, must for income tax purposes" (emphasis theirs) establish the reserves set forth in section 593(c) (1) of the Internal Revenue Code of 1954, and that "It should be kept firmly in mind that a deduction will be allowed for additions only to Reserves I and II (the nonqualifying loan reserve and the qualifying real property loan reserve)" (Page 16). Concerning accounting procedure, the bulletin states: Good accounting procedures require that the manual transfers to reserves should be made on the books prior to the end of the taxable year. Existing regulations, however, recognize that additional time may be needed for actually making transfers pursuant to action taken during the taxable year, and provide that such adjustments must be completed "as soon as practicable [after] the close of the taxable year" (interpreted as no later than the date of filing the tax return. See Reg. Sec. 1.593-1 and 36 T.C. No. 68). The first allocation under the new tax law will be for taxable years ending after December 31, 1962. For *212 all calendar year institutions this means the calendar-tax year 1963, the reserve allocations to be made as of December 31, 1963, and reflected on the tax return filed on or before March 15, 1964. [page 18, emphasis theirs.] * * * Thus, all institutions, both fiscal and calendar year, must make the necessary realignment of their reserve accounts described in this bulletin, so that the opening balances of the reserves as realigned appear on the books as of the beginning of 1963. [page 21; emphasis theirs.] The petitioner as an insured institution of the Federal Home Loan Bank System also received a letter from the Federal Home Loan Bank Board, Office of the Supervisory Agent, Third District, dated September 6, 1963, signed by R. J. Strecker, Supervisory Agent. That letter states that some institutions had rearranged and reclassified loss reserves in amounts and with new titles conforming to their understanding of the Revenue Act of 1962. In so doing, some of these institutions had improperly transferred amounts from the Federal Insurance Reserve. Insured institutions were cautioned to 423 observe long-standing statutory and regulatory requirements regarding the Federal *213 Insurance Reserve. This letter refers such institutions to the United States Savings and Loan League bulletin which provides as follows: * * * (The U.S. League, on page 23 of the Special Tax Bulletin of October 24, 1962, has explained how all this [meaning the establishment of the reserves required by the Revenue Act of 1962 in a manner satisfactory to the Federal Home Loan Bank Board] can be properly accomplished.) Joseph Keras, C.P.A., a partner in the partnership of Komlyn & Co., audited petitioner's books and prepared its 1963 Federal income tax return. Keras prepared certain work papers in January 1964 containing figures used in determining the petitioner's closing entries for 1963. Those work papers were given to the petitioner in January 1964. Closing entries for the year 1963 were entered on the petitioner's permanent books of account during January 1964. None of the reserves for losses on loans required by section 593(c) had been established when the petitioner closed its accounts for 1963, in January in 1964. The petitioner had not established any of the reserves for losses on loans as required by section 593 when the Commissioner's agent, Martin Croop, examined *214 petitioner's regular books of account on February 8, 1965. Work papers prepared by Keras concerning the reserves required by section 593 were not received by the petitioner until some time in August 1965. The work papers prepared by Keras entitled "Journal Entries" dated December 31, 1963, concerning the reserves required by section 593 were not prepared on December 31, 1963, but in February or March of 1964. Entries establishing the reserves required by section 593 were not entered in petitioner's permanent books of account until some time in August 1965. Keras was not an employee of the petitioner. His firm had independently contracted to perform services for the petitioner. His work sheets belonged to his firm and not to the petitioner. They were not a part of the petitioner's regular books of account. The petitioner's reserves for losses on loans as required by section 593 were not determined, established or entered in its regular books of account within a reasonable time after the end of its taxable year 1963. Opinion MURDOCK, Judge: The portions of section 593 material hereto were all incorporated in the Internal Revenue Code of 1954 by Public Law 87-834, October 16, 1962. Those *215 provisions are long and complicated but those material to the present controversy are only parts of 593(b)(2) and (c)(1) and (2). Section 593(b) is entitled "Addition to Reserves for Bad Debts" and subparagraph (2) is entitled "Percentage of taxable income method." It provides in part as follows: The amount determined under this paragraph for the taxable year shall be the excess of - (A) an amount equal to 60 percent of the taxable income for such year, over (B) the amount referred to in paragraph (1)(A) for such year, but the amount determined under this paragraph shall not exceed the amount necessary to increase the balance (as of the close of the taxable year) of the reserve for losses on qualifying real property loans to 6 percent of such loans outstanding at such time. * * * Section 593(c) entitled "Treatment of Reserves for Bad Debts" is as follows: (1) Establishment of reserves. - Each taxpayer described in subsection (a) which uses the reserve method of accounting for bad debts shall establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. For purposes *216 of this title, such reserves shall be treated as reserves for bad debts, but no deduction shall be allowed for any addition to the supplemental reserve for losses on loans. (2) Allocation of pre-1963 reserves. - For purposes of this section, the pre-1963 reserves shall, as of the close of December 31, 1962, be allocated to, and constitute the opening balance of - (A) the reserve for losses on nonqualifying loans, (B) the reserve for losses on qualifying real property loans, and (C) the supplemental reserve for losses on loans. The question for decision in this case is whether the requirements of section 593 of the Internal Revenue Code of 1954 in regard to the determination and establishment of a 1963 reserve for losses on qualifying real property loans have been met by this petitioner. Its regular books of account contained no reference to any such reserve until some time in August 1965, 20 months 424 after the end of its taxable year ended December 31, 1963. The evidence shows no justification or excuse for such a long delay. The Commissioner contends and cites cases which support the proposition that a bad debt reserve must be established and *217 reflected on the regular books of account by the close of the taxable year or as soon thereafter as praticable. Cf. Rio Grande Building & Loan Association, 36 T.C. 657; Colorado County Federal Savings & Loan Association, 36 T.C. 1167, affd. per curiam 309 F. 2d 751. See also the regulation cited in the Rio Grande case which is to the above effect and is similar to the regulation promulgated under the 1962 Act. Those cases and the regulations also support the proposition that "a reasonable time" in this case would not be as long as 20 months after the close of the taxable year. The petitioner then argues that the earlier existence of figures in the work sheets of the firm of accountants, which prepared its 1963 returns, which figures were used eventually to make the August 1965 journal entries in the petitioner's regular books of account, shorten the delay to a reasonable period of time. Those work sheets were never a part of the petitioner's regular books of account and do not come within the requirements of section 593. Finally, the petitioner claims some excuse for the 20 month delay because the Commissioner's regulations with respect to *218 section 593 were not available until May 4, 1964. Those regulations were merely the Commissioner's interpretation of the law and not a part of the law. The evidence does not indicate that the petitioner ever relied upon those regulations when they were available to it. The petitioner was adequately advised during 1963 by organizations to which it belonged of what it should do to comply with section 593. In any event it cannot justify its failure to comply with section 593 on the fact that the Commissioner's regulations did not come out until May 4, 1964. Decision will be entered for the Commissioner.