*Decision will be entered under Rule 50.*

ARCADIA SAVINGS AND LOAN ASSOCIATION, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71340–71344. Filed June 30, 1960.

*Richard H. Forster, Esq.*, for the petitioners.
*Walter S. Weiss, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax of Arcadia Savings and Loan Association (hereinafter called Arcadia) of $95,485.57 for 1954 and $24,227.62 for 1955. He also determined liabilities against the individual petitioners as transferees of Arcadia as follows:

---

[1] Proceedings of the following petitioners are consolidated herewith: Arthur F. Picco and Charles J. Picco, Trustees under the Will of Lena Picco, Deceased, Docket No. 71341; Gould L. Eddy and Lucia P. Eddy, Docket No. 71342; George E. Osborn, Docket No. 71343; and Harold G. Petz, Docket No. 71344.

| Docket No. | Year | Petitioner | Amount of transferee liability |
|---|---|---|---|
| 71341 | 1954<br>1955 | Estate of Lena Picco, Deceased_____ | $95,485.57<br>24,227.62 |
| 71342 | 1954<br>1955 | Gould L. Eddy and Lucia P. Eddy_____ | 95,485.57<br>24,227.62 |
| 71343 | 1954<br>1955 | George E. Osborn_____ | 95,485.57<br>24,227.62 |
| 71344 | 1954<br>1955 | Harold G. Petz_____ | 95,485.57<br>24,227.62 |

The stipulation of all of the facts is adopted as the findings of fact.

The only issue for decision is whether $259,931.32 deducted by Arcadia on its 1952 return as an addition to its reserve for bad debts is taxable as income for 1954 and 1955 when the amount was no longer needed as a reserve for bad debts. The liability of the individual petitioners as transferees is admitted if the deficiencies against Arcadia are sustained.

Arcadia was organized under the laws of California as a capital stock building and loan association. It filed its Federal income tax returns for 1954 and 1955 on a calendar year accrual basis with the district director of internal revenue at Los Angeles, California.

Building and loan associations such as Arcadia were exempt from Federal income tax until January 1, 1952. Section 23(k)(1) of the 1939 Code, applicable to Arcadia for 1952, allowed Arcadia to deduct as an addition to its reserves for bad debts $259,931.32, the amount determined by it to be a reasonable addition to its reserves for bad debts for that year. The section provided that the deduction could not be greater than the lesser of its net income for the year ($259,-931.32), or the amount by which 12 per cent of the total deposits or withdrawal accounts of its depositors at the end of the year exceeded the sum of its surplus, undivided profits, and reserves at the beginning of the year ($275,885.63). The deduction of the addition to the reserve for bad debts resulted in the petitioner having no taxable income for 1952.

Arcadia had accumulated during the years it was exempt from income tax a reserve of $167,500, and at the end of 1952 its total reserves amounted to $427,431.32. The Commissioner concedes that the portion of this amount accumulated while Arcadia was exempt from tax is not to be included in taxable income when the need for the reserve no longer existed. Arcadia made no further addition to its reserves for bad debts in any subsequent taxable year.

Arcadia entered into an agreement with Home Savings and Loan Association (hereinafter called Home), effective January 2, 1953, under which it sold substantially all of its loans receivable, its place of business, and its furniture and fixtures to Home which assumed

certain obligations of Arcadia including its obligations for deposits and withdrawal accounts. Arcadia agreed to remain contingently liable for a period of 18 months for any defaults on any of the loans transferred. Its loans outstanding as of December 31, 1954, amount to $243,805.22 and none was outstanding as of December 31, 1955. Arcadia did not report as income for 1954 or 1955 any portion of the $259,931.32 which it deducted in 1952 as an addition to its reserves for bad debts.

The Commissioner, in determining the deficiencies, added to income for 1954 $16,126.10 and for 1955 $243,805.22 on the ground that those amounts, representing the additions to the reserve for bad debts deducted in 1952, should be restored to income in 1954 and 1955 since, to the extent included, they were no longer necessary as reserves.

There is, as the petitioners recognize, a longstanding valid rule that additions to a reserve for bad debts previously deducted in computing taxable income must be included in taxable income when and to the extent that the reserve is no longer necessary. *Geyer, Cornell & Newell, Inc.*, 6 T.C. 96, 100; *West Seattle National Bank of Seattle*, 33 T.C. 341, 343. The Commissioner relies upon the above rule to support his inclusion of the stated amounts in Arcadia's income for 1954 and 1955. The correctness of the allocation made by the Commissioner of the total amount of the 1952 deduction between the years 1954 and 1955 is stipulated.

The petitioners' contention is that the amount which Arcadia was allowed to deduct in 1952 under section 23(k)(1), as amended and made applicable to that year, was intended by Congress to be exempt from tax, was not actually an addition to the reserve for bad debts, and is not to be included in income under the rule above stated. They argue that Congress intended the amount in question to be an addition to surplus rather than an addition to a reserve for bad debts and attempt to support this argument by statements of several Senators made when the amendment in question was being considered in Congress. Due consideration has been given this contention and argument of the petitioners, but the Court is not persuaded that the deduction of $259,931.32 taken in 1952 under section 23(k)(1) is to be treated differently from any other deduction taken as an addition to a reserve for bad debts.

Section 23(k) of the Internal Revenue Code of 1939 applicable to the year 1952 is headed "BAD DEBTS." Paragraph (1) is entitled "General Rule" and provides in material part as follows:

Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; * * *. In the case of a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, and a cooperative bank with-

out capital stock organized and operated for mutual purposes and without profit, the reasonable addition to a reserve for bad debts shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under this sentence shall not be greater than the lesser of (A) the amount of its net income for the taxable year, computed without regard to this subsection, or (B) the amount by which 12 per centum of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year.

Arcadia took the deduction for 1952 under the above-quoted provision. It was obviously allowed as an addition to a reserve for bad debts. The language of the provision clearly indicates this and there is no reason to depart from that conclusion because of anything that was said by members of Congress in the discussion leading up to the enactment of the provision. Congress was obviously generous in allowing the deduction. This might have been because of its desire to protect the solvency of building and loan associations and provide them with sufficient reserves to withstand possible adverse economic conditions. Nevertheless, the provisions which it made were for a reasonable addition to a reserve for bad debts. The Commissioner did not err in adding to the petitioner's income $16,126.10 for 1954 and $243,805.22 for 1955. *Geyer, Cornell & Newell, Inc., supra,* and *West Seattle National Bank of Seattle, supra.*

The parties have indicated that with the decision of the issue set forth above they can make all necessary computations under Rule 50.

*Decisions will be entered under Rule 50.*