COLORADO COUNTY FEDERAL SAVINGS AND LOAN ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77536. Filed September 29, 1961.

*Robert Mueller, Esq.*, for the petitioner.
*George Voss, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The Commissioner has determined deficiencies in petitioner's income tax for the years 1954 and 1955 in the amounts of $2,783.18 and $2,942.32, respectively. The deficiencies for 1954 and 1955 are due to one adjustment made by the Commissioner which is explained in the deficiency notice as follows:

(a) For the years 1954 and 1955 you realized taxable income, before deduction, for bad debts in the amounts of $9,763.04 and $10,062.97, respectively. Since no portion of these amounts was credited to a reserve for bad debts account, or any other account, established for the sole purpose of absorbing losses, as required by section 593 of the Internal Revenue Code of 1954 and regulations thereunder, it has been determined no deductions for bad debts are allowable for the year[s] 1954 and 1955 in the respective amounts of $9,763.04 and $10,062.97.

Petitioner contests this adjustment by appropriate assignments of error.

All of the facts have been stipulated and are hereby found as stipulated, including the exhibits which are attached to the stipulation. We shall summarize these facts for the purpose of endeavoring to give a clear understanding of the issue which is to be decided.

Petitioner is a corporation chartered under the laws of the United States of America and its place of business is Columbus, Colorado County, Texas. The income tax returns for the years involved were

filed with the district director of internal revenue for the first district of Texas at Austin, Texas.

On petitioner's 1952, 1954, and 1955 returns it made the following deductions:

| | | |
|---|---|---:|
| 1952 | Tax reserve for contingencies | $13,089.05 |
| 1954 | Reserve for tax purposes | 9,763.04 |
| 1955 | Reserve for losses—tax purposes | 10,062.97 |

These reserves were not reflected on petitioner's general books of account. The books of petitioner were examined by the Internal Revenue Service for the year 1953 and no change was made as to that year. The "Reserve for Tax Purposes" and the "Reserve for Losses— Tax Purposes" set forth in petitioner's 1954 and 1955 income tax returns, respectively, were on petitioner's general books of account as a part of surplus and undivided profits.

Petitioner is subject to the rules and regulations of the Federal Home Loan Bank Administration and is under the jurisdiction of its Little Rock, Arkansas, office. Petitioner is a member of and is subject to the regulations governing the Federal Savings and Loan Insurance Corporation.

The entries shown in the adjustment column of the balance sheets presented with petitioner's 1954 and 1955 returns were not shown on petitioner's general books of account prior to June 30, 1957, nor on any of its published statements.

On May 8, 1957, the following resolution was adopted by the board of directors of petitioner:

WHEREAS, annually there has been a specific reserve for losses claimed as a deduction in the federal income tax returns of the association; and

WHEREAS, the Board did not formally incorporate in the minutes resolutions setting up such reserves;

Now, THEREFORE, BE IT RESOLVED: That the reserves for losses heretofore claimed, be set up within the contingent reserves of the association for the following years and in the amounts stated, to-wit:

| | |
|---|---:|
| 1953 | $13,089.05 |
| 1954 | 9,763.04 |
| 1955 | 10,115.93 |
| 1956 | 15,602.63 |

for the sole and exclusive purposes of absorbing losses.

And be it further resolved, that as of the close of business of December 31st of each year an appropriate amount be set apart from the earnings of the association for such year for loss reserves, such reserves to be set up with and as a part of the association's Contingent Reserve.

The parties agree that the year 1953 referred to in the resolution just preceding should be 1952.

On June 30, 1957, a reserve for bad debts was recorded in petitioner's general ledger. Undivided profits were charged with

$48,570.65 and a "Reserve for Bad Debts" was credited with the same amount. Prior to June 30, 1957, an account entitled "Reserve for Bad Debts" was not carried by petitioner on its general books of account, nor on any of its published statements.

Petitioner is a member of the United States Savings and Loan League. In the files of the secretary-treasurer of petitioner is a bulletin dated December 12, 1952, entitled "Special Management Bulletin of the United States Savings and Loan League." The following is an excerpt from that bulletin:

> Pursuant to Section 313 of the Revenue Act of 1951, the exemption of savings and loan associations and cooperative banks, formerly provided for in Section 101 of the Internal Revenue Code, is repealed and all such associations are now subject to the regular federal corporation income tax and surtax effective January 1, 1952.
>
> The return * * * should claim deductions for (1) ordinary and necessary business expenses just like any other corporation federal income taxpayer; (2) any dividends declared by the taxpayer and paid or credited during the taxable year to holders of withdrawable accounts, which amounts may be withdrawn on demand (within the taxable year) subject only to the customary notice of intention to withdraw; and (3) amounts determined by the taxpayer to be reasonable additions to a reserve for bad debts and allocated thereto during the taxable year whenever the taxpayer's "surplus, reserves, and undivided profits" do not exceed 12 percent of withdrawable accounts at the end of the taxable year. The tax regulations just issued recognize any general loss reserve for bad debts to the extent required or permitted by law so that this allocation may be to a federal insurance reserve or any general loss reserve. All excess of earnings after expenses and dividends should be allocated by the under 12 percent associations to the federal insurance reserve or other general loss reserve to the extent permitted and any excess to a bad debt reserve. Any balance of gross income after the above deductions will be subject to ordinary corporation income taxation, which is at the rate of 30% on the first $25,000.00 and 52% on the excess of $25,000.00.

The bulletin continues on page 3:

> Commerce Clearing House in their Standard Federal Tax Reporter for 1955 and 1956, commenting editorially in Par. 3480.02 on Section 593 of the 1954 Internal Revenue Code, under the heading, "Additions to Reserve for Bad Debts," for loan associations etc., states, "However, institutions which use the reserve method for deducting bad debts and which have elected to use the 12% optional or alternative method of computing the deduction, must show, or be able to show, that the amount deducted was in fact credited to a reserve account for bad debts or losses, and not to a surplus or a 'free' reserve account, or the deduction will be disallowed, even though the amount would have been deductible if it had been credited to the proper account."

The involved reserves were a part of the surplus and undivided profits account in the certified semiannual statements filed by the petitioner with the Federal Home Loan Bank of Little Rock, Arkansas.

Petitioner's income tax return shows that for 1952 a deduction was claimed on Form 1120 in the amount of $13,089.05. The deduction

was labeled "Tax Reserve for contingencies" and was reflected in Schedule M of Form 1120 on line 22 as an adjustment for tax purposes not recorded on the books. The $13,089.05 also appears on the balance sheet submitted with the 1953 tax return. This balance sheet corrected the book figures to the opening on January 1, 1953. The said amount was shown on that balance sheet as a reserve for tax purposes with a notation under "Adjustments Explained" that it was for "Setting up additional Reserve for Tax Purposes." The attorney's working papers showing the balance sheet as of December 31, 1953, correct the book figures to the opening on January 1, 1954, and likewise reflect the same entry, notation, and amount as that shown on the balance sheet for January 1, 1953.

The attorney's working papers for 1954 reflect that the sum of $22,852.09 was set up as a reserve for tax purposes and the adjustment is explained in a notation on the balance sheet of the 1954 return. The amount was arrived at by carrying over the amount set up in 1952 ($13,089.05), adding to it the amount claimed in 1953 (which was zero) and adding the amount claimed on the 1954 Form 1120 as a "Reserve for Tax Purposes" ($9,763.04).

The adjusted balance sheet on the 1955 return reflects that the sum of $32,968.02 was shown as a "Reserve for Tax Purposes" and the adjustment is explained in a notation on the balance sheet of the 1955 return. This amount was arrived at by carrying over the amount shown in 1954 ($22,852.09) and adding to it the amount claimed on the 1955 Form 1120 as a "Reserve for Losses—Tax Purposes" ($10,062.97).[1]

In addition to the summary of the stipulated facts which is given above, we make the following ultimate finding of fact:

The account entitled "Reserve for Tax Purposes" set forth in petitioner's 1954 income tax return and the account "Reserve for Losses—Tax Purposes" set forth in petitioner's 1955 income tax return were not reflected on the regular books of account of the petitioner at the close of those taxable years, or as soon as practicable thereafter.

The petitioner in its brief states the issue as follows:

The only issue to be decided is whether or not respondent can disallow the deduction for a reasonable addition to a reserve for bad debts, under Section 593 Internal Revenue Code of 1954, for the sole reason that a reserve for the amount claimed was not reflected on petitioner's general books of account, but was reflected on the working papers of the attorney who prepared the tax returns and on the balance sheets submitted with the tax returns.

Respondent states the issue in his brief as follows:

_____

[1] These figures appear in the stipulation of facts but the total of $22,852.09 and $10,062.97 is $32,915.06, not $32,968.02. The unexplained difference of $52.96 is apparently accounted for by the fact that petitioner meant to claim deduction in 1955 in the amount of $10,115.93 (the figure set out in the resolution of the board of directors), rather than $10,062.97 (the amount actually deducted).

Whether petitioner is entitled to deduct $9,763.04 and $10,062.97 for the taxable years 1954 and 1955, respectively, as additions to a bad debt reserve referred to in Regs., sec. 1.593–1.

Section 593, I.R.C. 1954, which is the applicable statute is printed in the margin.[2]

A Federal savings and loan association such as petitioner is, may, with certain limitations not here pertinent, deduct amounts credited to a reserve for bad debts. However, the bad debt reserve and all adjustments thereto by reason of Treasury regulations must be reflected on that institution's regular books of account. The amounts so credited must be for the sole purpose of absorbing losses.

In the instant case petitioner did not record on its regular books of account "Reserve for Tax Purposes" deducted in its 1954 income tax return and "Reserve for Losses—Tax Purposes" deducted in its 1955 income tax return. In petitioner's regular books of account as disclosed by the facts which were stipulated, the reserves described above were a part of the petitioner's surplus and undivided profits. Therefore, these reserves were not reflected on petitioner's regular books of account as the Treasury regulations require.

During the years prior to January 1, 1952, institutions, including Federal savings and loan associations such as petitioner, were exempt from income tax under section 101(2) of the Internal Revenue Code of 1939. By section 313 of the Revenue Act of 1951, Congress determined that the exemption from income tax of these institutions should be removed and made a special provision for the deduction of bad debts.

Section 313(e) of the 1951 Revenue Act amended section 23(k)(1) of the 1939 Code to provide that in the case of a Federal savings and loan association, a reasonable addition to a reserve for bad debts should not be less than the amount determined by the taxpayer, except that the amount should not be greater than the lesser of (1) the taxpayer's net income, or (2) the amount by which 12 percent of the total deposits at the close of the involved year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the year. Section

---

[2] SEC. 593. ADDITIONS TO RESERVE FOR BAD DEBTS.

In the case of a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, and a cooperative bank without capital stock organized and operated for mutual purposes and without profit, the reasonable addition to a reserve for bad debts under section 166(c) shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under this sentence shall not be greater than the lesser of—

(1) the amount of its taxable income for the taxable year, computed without regard to this section, or

(2) the amount by which 12 percent of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year.

23(k)(1) has been reincorporated in the 1954 Code as section 593 and this latter section has been printed in the margin. The regulations prescribed that the establishment of bad debt reserves and all adjustments made thereto must be reflected on the regular books of account of the institution at the close of the taxable year or as soon as practicable thereafter. Sec. 29.23(k)–5(b)(3)(ii), Regs. 111; sec. 39.23 (k)–5(b)(3)(ii), Regs. 118; sec. 1.593–1, Income Tax Regs. Section 1.593–1, Income Tax Regs., contains the following provision:

> The establishment of such reserve and all adjustments made thereto must be reflected on the regular books of account of the institution at the close of the taxable year, or as soon as practicable thereafter. * * *

The petitioner contends that the foregoing regulation goes beyond the language and purpose of section 593 of the 1954 Code and is therefore, as attempted to be enforced here by the Commissioner, an invalid regulation. Our Court has expressly held that the regulation in question is a valid regulation and is enforcible by the Commissioner. *Rio Grande Building & Loan Association*, 36 T.C. 657. In that case we said, among other things, as follows:

> Although the Code section does not expressly state that the amount sought to be deducted as a reserve for bad debts must be reflected on the books of the taxpayer, the regulations implementing the Code state a clear and obvious requirement to do so. We think the regulation sets forth a reasonable administrative requirement and is in no sense inconsistent with the provisions of the Code. A reserve for bad debt deductions is not a statutory deduction, allowed irrespective of any bookkeeping entries establishing a reserve. In this respect it is unlike a true bad debt deduction where a taxpayer may deduct a worthless debt without maintaining any books of account.
>
> When a taxpayer elects to adopt the reserve method of deducting bad debts, he is allowed a reasonable addition and corresponding deduction each year even though no debts became worthless during the year. This amount, however, must be expressly set aside on the books of the company to provide a reserve for future losses. The underlying reason is that if, upon the association's liquidation, there remains a balance in the reserve account, or the reserve is invaded for other purposes, the association must pay income taxes in relation to this amount, since the amount represents deductions in prior years which never actually represented bad debts. *Arcadia Savings & Loan Association, supra.* [34 T.C. 679 (1960).]

This Court in the *Rio Grande Building & Loan Association* case further stated the time limit for including the entries to the various reserve accounts, and the adjusting entries, generally should be not later than the time at which the taxpayer files its income tax return for the year involved, and therefore a taxpayer may not be permitted to enlarge its reserve account retroactively.

Petitioner places reliance upon a resolution adopted by its board of directors on May 8, 1957. This resolution is set out in our summary of the facts above stated. The resolution contained, among other things, the following statement:

Now, THEREFORE, BE IT RESOLVED: That the reserves for losses heretofore claimed, be set up within the contingent reserves of the association for the following years and in the amounts stated, to-wit:

| | |
|---|---|
| 1953 [1952] | $13, 089. 05 |
| 1954 | 9, 763. 04 |
| 1955 | 10, 115. 93 |
| 1956 | 15, 602. 63 |

for the sole and exclusive purposes of absorbing losses.

And be it further resolved, that as of the close of business of December 31st of each year an appropriate amount be set apart from the earnings of the association for such year for loss reserves, such reserves to be set up with and as a part of the association's Contingent Reserve.

Petitioner points to the fact that the returns filed and balance sheets attached thereto reflect the deductions claimed, and to the fact that the above resolution of the board of directors in 1957, relating back to the years 1952, 1954, 1955, and 1956, authorized such reserve. It is argued that these facts constitute substantial compliance with the regulations under section 593.

We think that in view of our decision in the *Rio Grande Building & Loan Association* case, petitioner's above contention cannot be sustained. May 8, 1957, the date of the resolution, is about 2½ years after the taxable year 1954 and 1½ years after the taxable year 1955. We do not think these facts bring the setting up of the reserves on the books of petitioner within the ambit of the regulations above referred to. See *Rio Grande Building & Loan Association, supra.* We may also add that the fact that in the *Rio Grande Building & Loan Association* case there was an association incorporated under Texas State law and was under the supervision of the State Banking Commission of Texas, whereas petitioner was incorporated under Federal law and was supervised by the Federal Home Loan Bank Administration of Little Rock, Arkansas, is not a distinction that would make a difference as to the issue here to be decided. It seems to us that the same law and the same regulations govern both institutions.

*Decision will be entered for the respondent.*