COMMERCIAL SAVINGS & LOAN ASSOCIATION, SUCCESSOR BY WAY OF MERGER TO ALLIED BUILDING AND LOAN ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3660–67. Filed October 6, 1969.

*Charles A. Schorr*, for the petitioner.
*James T. Finlen, Jr.*, for the respondent.

OPINION

BRUCE, *Judge:* Respondent determined deficiencies in income taxes of Allied Building & Loan Association for the calendar years 1963 and 1964 in the amounts of $8,536.26 and $9,538.12, respectively. The petitioner is successor of Allied Building & Loan Association by merger. The sole issue remaining for decision is whether Allied is entitled to claimed deductions for additions to its reserves for bad debts for the taxable years.

All the facts are stipulated. The stipulation and the exhibits attached thereto are incorporated by this reference.

The petitioner, Commercial Savings & Loan Association, is a domestic building and loan association organized and operating under the laws of Nebraska. Its principal place of business was in Omaha, Nebr., at the time the petition was filed.

Prior to May 1, 1967, Allied Building & Loan Association was a domestic building and loan association organized in 1928 under the laws of Nebraska. Its principal place of business was in Norfolk, Nebr. On or about May 1, 1967, Allied was merged with and into Commercial.

Allied filed timely corporation income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue at Omaha.

During 1963 and 1964 Allied was subject to the supervision of the Nebraska State Department of Banking. Pursuant to State law, Allied maintained a ledger account in its books entitled "General Reserve—Legal." This reserve was established some years prior to 1963 for the purpose of absorbing losses sustained by Allied. Such reserve qualified as a bad debt reserve for years prior to 1963 under the income tax regulations then in effect.

During 1963 and 1964 Allied's depositors were insured by the Federal Savings & Loan Insurance Corp. under direction of the Federal Home Loan Bank Board.

Pursuant to rules of the Federal Savings & Loan Insurance Corp., section 563.11 of "Rules and Regulations for Insurance of Accounts," Allied maintained during 1963 and 1964 a ledger account in its books entitled "Legal Reserve—Reserve for Federal Insurance." This reserve was established some years prior to 1963 for the purpose of absorbing losses sustained by Allied. Such reserve qualified as a bad debt reserve for years prior to 1963 under the income tax regulations then in effect.

Allied claimed deductions in its returns for 1963 and 1964 as additions to its reserve for bad debts. These deductions consisted of credits to the accounts described above in amounts as follows:

| Account | 1963 | 1964 |
|---|---|---|
| General reserve—legal | $5, 147. 95 | $6, 561. 67 |
| Legal reserve—for Federal insurance | 10, 295. 90 | 26, 679. 50 |
| | 15, 443. 85 | 33, 241. 17 |

The credits to the foregoing accounts were made pursuant to resolutions of Allied's board of directors and were posted to these accounts during such taxable years respectively. By reason of the deductions for additions to these reserves, and other deductions, Allied's returns reported no income taxes as due for 1963 or 1964.

When Allied closed its books of account for 1963 and 1964, none of the reserves for losses on loans required by section 593 of the Internal Revenue Code of 1954, as amended by the Revenue Act of 1962, had been established. Allied established the reserve accounts in its books as required by section 593(c), as so amended, during December 1965. During March 1966 the amount of its bad debt reserves as of December 31, 1962, and its 1963 and 1964 additions to bad debt reserves were allocated to the reserve accounts so established.

Prior to 1952, domestic building and loan associations were exempt from income tax. In 1951 Congress repealed the exemption and subjected such associations to corporation income tax. At the same time they were allowed a special deduction for additions to bad debt reserves which proved to be so large that they remained virtually tax exempt.[1] This provision, in section 23(k)(1) of the 1939 Code, was carried over in section 593 of the 1954 Code.[2]

The Revenue Act of 1962 revised section 593 extensively and provides a complex method of computing additions to bad debt reserves of these institutions for taxable years ending after 1962.[3]

---

[1] H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 436.

[2] SEC. 593. ADDITIONS TO RESERVE FOR BAD DEBTS.

In the case of a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, and a cooperative bank without capital stock organized and operated for mutual purposes and without profit, the reasonable addition to a reserve for bad debts under section 166(c) shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under this sentence shall not be greater than the lessor of—

    (1) the amount of its taxable income for the taxable year, computed without regard to this section, or

    (2) the amount by which 12 percent of the total deposits or withdrawable accounts of its depositors at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year.

[3] SEC. 593. RESERVES FOR LOSSES ON LOANS.

  (c) TREATMENT OF RESERVES FOR BAD DEBTS.—

    (1). ESTABLISHMENT OF RESERVES.—Each taxpayer described in subsection (a) which uses the reserve method of accounting for bad debts shall establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. For purposes of this title, such

The amended provisions authorize three reserves for bad debts, (1) a reserve for losses on qualifying real property loans, (2) a reserve for losses on nonqualifying loans, and (3) a supplemental reserve for losses on loans. The pre-1963 reserves held by an association were to be allocated to these reserves "as of the close of December 31, 1962."

Allied credited amounts in 1963 and 1964 to accounts entitled "Legal Reserve—Reserve for Federal Insurance" required by the Federal Savings & Loan Insurance Corp., and "General Reserve—Legal" required by Nebraska State regulations.

Respondent disallowed the deductions claimed for additions to such reserves for the reason that Allied had "failed to establish and maintain the reserves required by the provisions of section 593(c)."

Respondent contends that the establishment by Allied in 1965 of the reserves required by section 593(c) was not made within a reasonable time after the close of the years 1963 and 1964, since it was delayed 23 months and 11 months, respectively, after the end of each of these years.

The Revenue Act of 1962, which extensively revised section 593, was approved October 16, 1962. The United States Savings & Loan League, a voluntary organization of savings and loan associations, of which Allied was a member, issued a special tax bulletin to its members under date of October 24, 1962, informing them of the accounting require-

---

reserves shall be treated as reserves for bad debts, but no deduction shall be allowed for any addition to the supplemental reserve for losses on loans.

(2) ALLOCATION OF PRE-1963 RESERVES.—For purposes of this section, the pre-1963 reserves shall, as of the close of December 31, 1962, be allocated to, and constitute the opening balance of—

    (A) the reserve for losses on nonqualifying loans,

    (B) the reserve for losses on qualifying real property loans, and

    (C) the supplemental reserve for losses on loans.

(3) METHOD OF ALLOCATION.—The allocation provided by paragraph (2) shall be made—

    (A) first, to the reserve described in paragraph (2)(A), to the extent such reserve is not increased above the amount which would be a reasonable addition under section 166(c) for a period in which the nonqualifying loans increased from zero to the amount thereof outstanding at the close of December 31, 1962;

    (B) second, to the reserve described in paragraph (2)(B), to the extent such reserve is not increased above the amount which would be determined under paragraph (3)(A) or (4) of subsection (b) (whichever such amount is the larger) for a period in which the qualifying real property loans increased from zero to the amount thereof outstanding at the close of December 31, 1962; and

    (C) then to the supplemental reserve for losses on loans.

(4) PRE-1963 RESERVES DEFINED.—For purposes of this subsection, the term "pre-1963 reserves" means the net amount, determined as of the close of December 31, 1962 (after applying subsection (d)(1)), accumulated in the reserve for bad debts pursuant to section 166(c) (or the corresponding provisions of prior revenue laws) for taxable years beginning after December 31, 1951.

    \*        \*        \*        \*        \*        \*        \*

(6) CHARGING OF BAD DEBTS TO RESERVES.—Any debt becoming worthless or partially worthless in respect of a qualifying real property loan shall be charged to the reserve for losses on such loans, and any debt becoming worthless or partially worthless in respect of a nonqualifying loan shall be charged to the reserve for losses on nonqualifying loans; except that any such debt may, at the election of the taxpayer, be charged in whole or in part to the supplemental reserve for losses on loans.

ments of the new provisions for loss reserves under the statute. Allied received the bulletin. The office manager, who was a member of the board of directors and was assistant secretary-treasurer of Allied, did not bring the bulletin to the attention of the board prior to the filing of the 1964 tax return. This officer signed Allied's returns for 1963 and 1964.

The regulations pertaining to section 593, as amended, were published in May 1964, after petitioner had filed its return for 1963. They state that the amounts claimed as deductions must be credited to the reserve for losses on nonqualifying loans and to the reserve for losses on qualifying real property loans by the close of the taxable year or as soon as practicable thereafter.

In *Rio Grande Building & Loan Association*, 36 T.C. 657 (1961), it was held that such an association may not take deductions for additions to a reserve for bad debts unless the amount is actually transferred to a reserve account on its books and that it may not retroactively increase such reserve. The opinion explains the purpose of the requirement (p. 663) :

A reserve for bad debt deductions is not a statutory deduction, allowed irrespective of any bookkeeping entries establishing a reserve. In this respect it is unlike a true bad debt deduction where a taxpayer may deduct a worthless debt without maintaining any books of account.

When a taxpayer elects to adopt the reserve method of deducting bad debts, he is allowed a reasonable addition and corresponding deduction each year even though no debts became worthless during the year. This amount, however, must be expressly set aside on the books of the company to provide a reserve for future losses. The underlying reason is that if, upon the association's liquidation, there remains a balance in the reserve account, or the reserve is invaded for other purposes, the association must pay income taxes in relation to this amount, since the amount represents deductions in prior years which never actually represented bad debts. *Arcadia Savings & Loan Association, supra*. [34 T.C. 679 (1960), affd. 300 F. 2d 247 (C.A. 9, 1962)]

The privilege of deducting amounts for bad debts before they are ascertained is not without condition. The association must earmark this amount and cannot under penalty of having the amount restored to income use it for any purpose other than to apply against bad debts as they occur. Allowing a taxpayer to deduct amounts for losses which have not yet occurred, and at the same time allowing it to use such amounts currently for other purposes, would clearly circumvent the intention of the provisions of the Code.

Petitioner contends that the present case is distinguishable since Allied actually made a determination and transferred amounts to reserve accounts within the taxable year. Petitioner says that Allied's only failure was that its established reserves had not been "realigned" in accordance with section 593, as amended, and that to deny any deduction would be an unwarranted exaltation of form over substance.

Petitioner contends that there is no time requirement in the statute within which the reserves described are to be established and that

where, as here, there was a determination made by its board of directors in each year of an addition to bad debt reserves and an actual reflection on the books of the association within each year, the function or purpose of the statute is served and the requirement of the regulation, as amended, that the amount be actually credited on the books within the .taxable year or as soon thereafter as practicable, is met. Petitioner points out that the realignment of an association's reserves and allocations thereto could in some cases be made considerably later than December 31, 1962. Section 593(d) directs that associations on a fiscal year beginning in 1962 and ending in 1963 are to apportion income on a daily basis and determine their deductions for the period before 1963 under the prior statute and for the period after 1962 under the amended provisions. Thus an association on a fiscal year ended November 30 could not make an allocation until long after December 31, 1962.

Section 593(c), as effective in 1963, requires that a building and loan association which uses the reserve method of accounting for bad debts "shall establish and maintain" specified reserves. The statute, as amended, required that the reserves accumulated as of December 31, 1962, "be allocated to and constitute the opening balance" of three named reserves. The allocation prescribed is, first, to the reserve for nonqualifying loans to the extent that reserve is not increased above the amount that would be reasonable in relation to the loans outstanding at the end of 1962; second, to the reserve for qualifying real property loans to the extent that reserve is not increased above the amount which would be determined under the applicable provisions relating to such loans; and third, any remainder to the supplemental reserve for losses on loans.

Any debt becoming worthless in respect of a qualifying real property loan is to be charged to the reserve for losses on such loans and any debt becoming worthless in respect of a nonqualifying loan is to be charged to the reserve for losses on such loans. The association may elect to charge any such loss to the supplemental reserve.

The addition to the reserve for bad debts authorized by section 593 consists of two parts, an amount determined under section 166 as a reasonable addition for losses on nonqualifying loans, and an amount for losses on qualifying real property loans determined under one of three alternative methods and subject to specified limits. One of the methods is based upon taxable income, one on the amount of real property loans outstanding, and another is based upon experience. Sec. 593(b). The related regulations require that the taxpayer include in its income tax return a computation of the addition under this section, and in the case of any subsequent adjustment allow the taxpayer to choose the method of recomputation.

Under the provisions in effect before 1963, an association was permitted a deduction of the amount of its otherwise taxable income limited to the amount by which 12 percent of its total deposits or withdrawable accounts at the close of the year exceeded the sum of its surplus, undivided profits, and reserves at the beginning of the year. The amended provisions limited the deduction to 60 percent of the taxable income in one of the alternative computations.[4]

It is evident that Allied ignored the amendments to section 593. In its returns for 1963 and 1964 it claimed deductions for amounts which, together with other deductions, eliminated all taxable income. The deductions apparently were computed in accordance with the prior statute and not under the law applicable to the taxable years. There was no explanation of the computation, as called for in the related regulations. The balance sheets are not in evidence and no computation in accord with the revised provisions is furnished. Petitioner has not shown what amounts would be allowable additions under the statute as amended.

The Congress, in amending section 593, has specifically required the establishment of three new reserves and required the allocation of pre-1963 reserves to the new accounts. A taxpayer using the reserve method must comply with the conditions prescribed by the statute and related regulations. The regulations require that the amounts be credited to the proper reserves by the close of the taxable year or as soon as practicable thereafter. Sec. 1.593–5(b)(1). The regulation is a reasonable interpretation of the statute.

It has been stated that the time limit for making entries to reserve accounts generally should be not later than the time at which the taxpayer filed its income tax return for the year involved. *Rio Grande Building & Loan Association, supra* at 664; *Colorado County Federal Savings & Loan Assn.*, 36 T.C. 1167 (1961), affd. 309 F. 2d 751 (C.A. 5, 1962).

Where the Congress has authorized certain tax privileges and has prescribed the conditions to be met in qualifying for them it has been held that strict compliance with the statute is necessary, for example:

---

[4] SEC. 593. RESERVES FOR LOSSES ON LOANS.

   (b) ADDITION TO RESERVES FOR BAD DEBTS.—

      \*     \*     \*     \*     \*     \*     \*

   (2) PERCENTAGE OF TAXABLE INCOME METHOD.—The amount determined under this paragraph for the taxable year shall be the excess of—

      (A) an amount equal to 60 percent of the taxable income for such year, over

      (B) the amount referred to in paragraph (1)(A) for such year,

but the amount determined under this paragraph shall not exceed the amount necessary to increase the balance (as of the close of the taxable year) of the reserve for losses on qualifying real property loans to 6 percent of such loans outstanding at such time. For purposes of this paragraph, taxable income shall be computed (i) by excluding from gross income any amount included therein by reason of subsection (f), and (ii) without regard to any deduction allowable for any addition to the reserve for bad debts.

corporations seeking treatment as small business corporation, *William Pestcoe*, 40 T.C. 195 (1963); *J. W. Frentz*, 44 T.C. 485 (1965), aff'd. 375 F. 2d 662 (C.A. 6, 1967); *Thomas E. Bone*, 52 T.C. 913 (1969); deductions claimed for depletion, *Riley Co.* v. *Commissioner*, 311 U.S. 55 (1940); election to capitalize or expense intangible drilling costs, *Boone County Coal Corporation* v. *United States*, 121 F. 2d 988 (C.A. 4, 1941); valuation for capital stock tax purposes, *Scaife Co.* v. *Commissioner*, 314 U.S. 459 (1941). In the foregoing cases the courts have held that the privileges will be denied if the statutory requirements are not met.

Here Allied has claimed deductions for additions to reserves without complying with the requirements of the law applicable to the taxable years. The reserve accounts should have been established as soon as practicable after December 31, 1962. They were established in December 1965. The transfers of the pre-1963 reserves were made in March 1966. Allied had received advice before the end of 1962 that it should comply with the requirements of the new provisions. The respondent did not err in disallowing the deductions claimed which were not authorized under the law.

*Decision will be entered for the respondent.*