**PEOPLES FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 69–897.**

United States District Court,
D. South Carolina,
Florence Division.

Dec. 7, 1970.

W. Laurier O'Farrell, Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Hubert M. Doster and Lawrence R. Jones, Jr., Attys., Dept. of Justice, Washington, D. C., and Joseph O. Rogers, Jr., U. S. Atty., and Wistar D.

Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, OPINION AND ORDER

DONALD RUSSELL, District Judge.

This action to recover allegedly improperly assessed and collected income taxes involves the proper application of Section 593 of the Internal Revenue Code of 1954 (26 U.S.C.) and the regulations issued thereunder, by which a domestic building and loan association organized for mutual purposes and without profit may, in lieu of taking a deduction of actual loan losses sustained, elect to use the reserve method of deducting bad debts for tax purposes.

The facts giving rise to the controversy are not in dispute and have been stipulated by the parties.

The plaintiff-taxpayer is a federally chartered building and loan association and qualifies under Section 593. Its fiscal year corresponds to the calendar year. Following the enactment of the Revenue Act of 1951, subjecting associations such as the plaintiff for the first time to federal income taxation, it adopted for federal income tax purposes the reserve method of accounting for bad debts as authorized under Section 593 and followed consistently this procedure thereafter in calculating its federal tax. In 1962, Section 593 was revised to provide more detailed and exacting accounting procedures than were formerly required.[1] As revised, it required the taxpayer to "establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans."[2] It will be noted that the statute itself does not prescribe specifically when the entry of the reserves must be made on the books of the association but the Regulation issued thereunder states that the reserves, in order to qualify as a deduction, "must be credited, respectively, to the reserve for losses on nonqualifying loans and to the reserve for losses on qualifying real property loans *by the close of the taxable year, or as soon as practicable thereafter*." (Italics added.)[3] This Regulation has been held to be "a reasonable administrative requirement and is in no sense inconsistent with the provisions of the Code."[4]

Following this revision of Section 593, the plaintiff established, in addition to its general ledger, a supplemental subsidiary ledger. On its general ledger, it recorded its reserve for losses under a general heading; on its supplemental subsidiary ledger it stated its reserves, broken down into the three categories prescribed by the amendment of 1962. This method of maintaining two sets of books to evidence the reserve account seems to have been the approved way of complying with the revised Statute.

The petitioner regularly and punctually filed its annual income tax returns on or before March 15 of the year following and at the same time it made the appropriate entries both on its general ledger and on its supplemental subsidiary ledger in strict compliance with Regulation 1–593–5(b) for all years prior to fiscal year 1965.

The preparation of its tax returns and the entries in the supplemental subsidiary ledger were always handled by the plaintiff's tax accountant, N. E. Derrick, of the firm of Derrick, Stubbs & Stith. In preparing the plaintiff's tax return for fiscal year 1965, Mr. Derrick computed and determined, in accordance with the formula prescribed by Section 593, the loss reserves allowable as a deduction for that year at $156,479.89, and entered same as a deduction on plaintiff's return under the heading "Bad

1. See, Levelland Savings and Loan Assoc. v. United States (5th Cir. 1970) 421 F. 2d 243, 247.

2. Section 593(c) (1).

3. Section 1.593–5(b), Treasury Regulations, 26 C.F.R.

4. Rio Grande Building & Loan Association v. Commissioner (1961) 36 T.C. 657, 663.

debts", supplemented by a schedule which spelt out in exacting detail the computation of the deductible reserves as authorized under the Statute and Regulations.[5] In addition, the accountant prepared and attached to the return a statement of income and expenses for 1965, showing reconciliations of income per books with federal and state income tax returns and stating the reserves set up for 1965 both for state and federal income tax purposes.[6] So prepared, this return was filed on March 15, 1966, and the plaintiff paid the tax reported to be due thereon. Mr. Derrick did not, however, make entries of the deducted reserves on the plaintiff's subsidiary ledger until August 4, 1966, some 4½ months after the filing of plaintiff's tax return for fiscal year 1965 and somewhat more than two weeks after an audit of the taxpayer's books was begun on July 12, 1966, by the Internal Revenue Service. The plaintiff had credited, though, its reserve account in its general ledger on June 30, 1965, with $55,000 and on December 31, 1965, with $60,000.[7] In explanation of his delay in making the entries in the supplemental ledger, the accountant testified by deposition that in 1965, he had been hospitalized and was working in early 1966 under considerable physical strain, which was compounded by an illness on the part of one of his senior partners. He conceded frankly his familiarity with the applicable Regulation, pointed to his prior strict compliance with its provisions, and excused his delay in making the required entries because of his physical condition, coupled with the pressure of business and the additional burden incident to his partner's physical difficulties. It is undisputed that the plaintiff looked to the accountant to make the proper entries and the accountant recognized this responsibility.

Based on an audit of plaintiff's tax return for 1965, the Commissioner of Internal Revenue disallowed the entire amount claimed by the taxpayer as a loss reserve and, as a result, the plaintiff was assessed for a deficiency in the amount of $75,110.34, with interest to the extent of $7,534.73. Plaintiff paid such deficiency, with interest, and, upon disallowance of its claim for refund, filed this action.

There is no denial by the defendant of plaintiff's right to claim a tax deduction under Section 593 for the tax year 1965 or of the correctness of the computation of such deduction under the formula prescribed by Section 593 as prepared by plaintiff's accountant and as stated in its tax return for the year 1965. The theory of the defense is that the right to such deduction, even though conceded had it been timely exercised, was lost by the failure of the plaintiff to follow the prescribed procedure in claiming such deduction. Specifically, it is the contention of the defendant that under the applicable Regulation, the taxpayer, to qualify for the deduction allowable under Section 593, had to post in its supplemental subsidiary ledger its claimed reserves for the calendar year 1965 not later than the date on which it filed its tax return for that year (i. e., March 15, 1966) and that the entry after such date on August 4, 1966, was too late as a matter of law, thereby rendering the claimed deduction unallowable. The plaintiff argues, on the other hand, that the Regulation does not fix any arbitrary date for the entry of the reserve accounts on the taxpayer's ledger, that, in fixing the time for making such entry, it employs the flexible phrase "as

---

5. Schedule 2 of Petitioner's Return for 1965.

6. See Sheet 3, Exhibit B, Tax Return. Apparently, the "Bad Debt Reserve Addition" for state tax purposes corresponds with the allocations authorized on June 30 and December 31, 1965, whereas the federal reserve deduction was fixed on the basis of the accountant's computation made using the formula authorized by Section 593.

7. These allocations were apparently made incidental to fixing the availability of earnings for the declaration of dividends.

soon as practicable", and that, under all the special circumstances in this case, the entry of August 4, 1966, especially when considered in the light of the taxpayer's tax return filed on March 15, in which the reserves were so painstakingly calculated and carefully identified in the several categories required by the Statute and Regulation, met the requirements of the Regulation. I am inclined to agree with the taxpayer.

The defendant relies on Rio Grande Building & Loan Association v. Commissioner, *supra*, (36 T.C. 657) and a line of cases based on that decision, in support of its position. It concedes that there are differences of fact between the *Rio Grande Case* and its progeny, on the one hand, and the present case, on the other, but it urges that the factual differences are unimportant and that the legal principle is identical in both instances. I do not agree.

In the bellwether case, (i. e., the *Rio Grande Case*) it is true the Tax Court construed the Regulation involved here, while not establishing "an absolute time limit by which the entries must be made on the books" of the taxpayer, as declaring that "generally the limit should be not later than the time at which the taxpayer files its income tax return for the year involved." (at p. 664, 36 T.C.) However, the taxpayer did not in that case, *either in its tax return* or on its ledger, evidence its reserve accounts for any of the years in question. This was a critical point in the decision, as indicated by the Tax Court's pointed observation that "Petitioner, on its income tax returns for all 3 years, however, did not claim it transferred to a reserve account any particular amount. * * * in fact never transferred to any reserve account an amount equal to its claimed deductions (i. e., an amount equal to its

net income) during any of the years involved." [8]  (at p. 661, 36 T.C.)  And, to emphasize the fact that the circumstance that there was no identification of the loss reserve deduction in the taxpayer's tax return was critical, the Court cited as a case involving "A situation similar to that in the instant case" (at p. 665, 36 T.C.) Rogan v. Commercial Discount Co., (9th Cir. 1945) 149 F.2d 585, 587, cert. denied 326 U.S. 764, 66 S.Ct. 145, 90 L.Ed. 460, and quoted therefrom, *inter alia*, with italics, the following sentence:

> "It (the taxpayer) has never made on its books (so far as the record shows) or in its income tax return, any addition to its reserve for bad debts on the account of * * * [the $124,000 additional requested], * *." (at p. 666, 36 T.C.)

The reason for the requirement that the loss reserve deduction be evidenced in some definitive way was, as the Tax Court remarked, to thwart the taxpayer in seeking to enlarge "its reserve account retroactively, based upon subsequent events which later support the view that the reserve is inadequate." (at p. 664, 36 T.C.)  Since, neither in its income tax return nor on its general ledger had the taxpayer set up, in specific detail, its claimed deduction, the Tax Court concluded:

> "While petitioner could, under the law, have determined at the end of each year that its reserves should equal its net income and, on the basis of such determination, would have been entitled to a deduction of the amount so determined, it is not to be permitted, *several years later and only after being challenged by respondent,* to contend successfully that it should be allowed to bring up its reserves to

8. The Court in Newport Federal Savings & Loan Ass'n v. United States (D.C. Ark.1966) 259 F.Supp. 82, 85, states that the tax return filed by the Association in the *Rio Grande Case* "indicated an intent to credit to bad debt reserves net earnings after dividends for the taxable years involved * * *." However, there was *no specificity to any such claimed deduction,* as the Tax Court in the holding quoted expressly found; the taxpayer merely filed a "no-tax" return, from which it was inferred that losses eliminated any profit realized.

equalize its requested deduction." (Italics added.) (at p. 666, 36 T.C.) But, to this, it added this final, significant comment: "In situations where the bookkeeping entries do not reflect the true determination and there is merely a technical error in manifesting that intention on the books, the courts may look beyond the entries and allow the taxpayer to correct its reserve accounts." (at p. 667, 36 T.C.)

It is plain that the situation of the taxpayer in this case is dissimilar to that in the *Rio Grande Case*. Unlike the taxpayer in the latter case, the plaintiff, through its accountant, prepared and filed in exacting detail a calculation of its loss reserve deduction, made in strict conformity with the requirements of Section 593. It went further and in its tax return included a schedule showing its loss reserve accounts, (1) as stated on its general ledger, (2) as stated for state tax purposes and (3) as stated for federal tax purposes under Section 593. Its reserve accounts were not "in a state of flux"; they were carefully and accurately calculated; and they were irrevocably stated on its income tax return, filed on the date required by law. The only thing the taxpayer failed to do—even under the defendant's contention—was to transpose at that very time the statement of the items in the loss reserve account as shown on the income tax return onto its subsidiary ledger. At best, this failure, which, incidentally, was the failure of the taxpayer's tax accountant and not directly that of the taxpayer itself—was, to use the language of the *Rio Grande Case* itself, "merely a technical error in manifesting that intention (to make the allocation to its loss reserve accounts) on the books" of the plaintiff. It was, what one Court has aptly characterized as "the mere lack of compliance with a bookkeeping formality", a failure which does not in itself require a denial of a deduction for a bad debt loss. Cf., Littlewood v. Kyle (D.C.Pa.1938) 34 F.Supp. 509, 510. The independent accountant, whose responsibility it was to make the entries, over-

looked so doing and I am convinced his physical condition had something to do with his failure. In prior years he had always made, simultaneously with the filing of the tax returns, the corresponding entries on the subsidiary ledger. His failure in this instance was a simple inadvertence and was not intended to prejudice the Government in any way; indeed, as a result of the clear statements in the income tax return, it could not prejudice the Government. Certainly, such failure could not, in the face of its tax return, provide the plaintiff with any opportunity to enlarge "retroactively" its loss reserve account. The reason for the Regulation and the problem against which it sought to guard thus do not exist in this case. It seems to me to be merely justice to sustain the taxpayer's right to a deduction that is manifestly its just due and not to penalize it for a mere failure to make a bookkeeping entry in conformity with the calculation of its tax, as set forth in detail in its return, a failure concededly the responsibility of its experienced tax accountant, who for fifteen years had prepared the calculations and made the entries in complete and absolute compliance with all the statutory and regulatory requirements.

The Courts, in dealing with tax cases involving claims to deductions, have often looked at the realities of a situation. Thus, in Toledo Home Federal Savings & Loan Ass'n v. United States (D.C. Ohio 1962) 203 F.Supp. 491, 494, aff. 318 F.2d 292, the Court allowed an association, which initially had elected to use the charge-off method of reporting loan losses to be relieved of its election and to seek allowable deductions for three years by employing the loss-reserve method, though, it was found on the facts, that under such latter method no deductions were allowable to the taxpayer. And in Travis v. C. I. R. (6th Cir. 1969) 406 F.2d 987, 991, the taxpayers, whose method of accounting for income on their tax return was disallowed, were permitted, on the basis of equity and fair dealing, to charge against their

income "a realistic bad debt reserve", even though they had not theretofore claimed a deduction for such debt reserve.

Nor do the other cases cited by the defendant command the denial of the deduction herein. In Commercial Savings & Loan Association v. Commissioner (1969) 53 T.C. 14, the taxpayer, a domestic building and loan association, failed to establish the reserve accounts required under amendment of 1962 to Section 593 for the years 1963 and 1964 until December, 1965, and, while claiming deductions for such reserves in its tax returns for such years, it gave in such returns "no explanation of the computation, (of such reserves) as called for in the related regulations. The balance sheets are not in evidence and no computation in accord with the revised provisions is furnished. Petitioner has not shown what amounts would be allowable additions under the statute as amended." (at p. 20, 53 T.C.) In the present case, on the other hand, the tax return did include an "explanation of the computation" of the reserve and it furnished the Commissioner with a "computation in accord with the revised provisions."

In Newport Federal Savings & Loan Ass'n v. United States (D.C.Ark.1966) 259 F.Supp. 82, which also involved the application of Section 593, the building and loan association-taxpayer did not make its entries of claimed reserves by way of a tax deduction under Section 593 until the latter part of June of the year following because "the affairs of the corporation, at least as far as bad debt reserves were concerned, were in a state of flux until June 28, 1961, when it was decided to take the net earnings for the second half of 1960 out of undivided profits and put them into the reserve accounts." (at p. 86, 259 F.Supp.) While stating that "the Court believes that only in exceptional cases should a deduction for such a credit be allowed where the credit is not reflected on the corporate books until after the return is filed or required to be filed", (at p. 86, 259 F.Supp.) the actual holding of the Court was that, when the tax return was filed, the taxpayer had actually allocated its earnings to surplus and having delayed until June of the following year to rescind such resolution and to make an allocation to loss reserve account, it had not acted timely. Despite this, the Court did permit an allocation of nontaxable income to the loss reserve account by way of an offset. There was, however, no such action in this case: the taxpayer made its allocation at the time it filed its income tax return as evidenced by its tax return with its schedules.

In Colorado County Federal Savings & Loan Ass'n v. Commissioner (1961) 36 T.C. 1167—another case involving the application of Section 593—the taxpayer on its income taxes took a deduction under the title "Tax Reserve for contingencies" for the years 1954 and 1955. Such deduction was "not reflected on petitioner's general books of account" as reserves but as *a part of the petitioner's surplus and undivided profits*, (at pp. 1170–1171, 36 T.C.) and thus available for dividends. They were not definitely allocated to reserve for losses on loans until May 8, 1957, "about 2½ years after the taxable year 1954 and 1½ years after the taxable year 1955". (at p. 1173, 36 T.C.) The situation thus presented was a retroactive reallocation on the books of the taxpayer some year and a half after the end of the taxpayer's tax year. This, again, was the very evil that the *Rio Grande Case* emphasized the Regulation was intended to thwart and an evil not present in the immediate case.

To summarize, I am of opinion the plaintiff is entitled to a deduction for its loss reserve under Section 593, as computed on its tax return for the year 1965 and that the assessment made because of delay in entering such loss reserves on the plaintiff's subsidiary ledger was improper.

The foregoing, together with Stipulation of facts as entered into between the parties, shall constitute Findings of Fact and Conclusions of Law required by Rule 52, F.R.Civ.P. (28 U.S.C.A.).

Accordingly, let judgment be entered in favor of the plaintiff, and

It is so ordered.