**LEVELLAND SAVINGS AND LOAN ASSOC., Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 27608.**

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1970.

Rehearing Denied March 4, 1970.

Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty. Tax Div., Jonathan S. Cohen, Robert I. Waxman, Attys., U. S. Dept. of Justice, Washington, D. C., William W. Guild, Atty., Tax Div., U. S. Dept. of Justice, Fort Worth, Tex., for defendant-appellant.

Jack W. Hawkins, Dallas, Tex., Earl R. Allison, Gardere, Porter & DeHay, Dallas, Tex., for plaintiff-appellee.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The taxpayer is a Texas state-chartered building and loan association. It adopted for federal income tax purposes the reserve method of accounting for bad debts. During each of the taxable years 1961, 1962 and 1963 the association included in the amount claimed as a deduction for addition to its bad debt reserve a sum which it had transferred to its "nonwithdrawable capital stock account." Each year the transfer to this stock account was in addition to amounts transferred to the bad debt reserve account.

The "nonwithdrawable capital stock account" was maintained under the provisions of Tex.Rev.Civ.Stat.Ann., Art. 881a–36(f) [now Tex.Rev.Stat.Ann., Art. 852a, § 2.02], which we set out in the margin.[1]

---

1. Art. 881a–36(f).

Reserve fund or permanent stock, which when sold may not be withdrawn, except as hereafter provided, until after all liabilities of the association have been satisfied in full, including the full book value of all other types or classes of shares and share accounts, and which may receive as dividends all the earnings of the association after expenses have been paid and the dividends declared by the directors upon other classes of shares and share accounts have been paid or credited; which such stock if allowed by the by-laws must be fully paid for in advance, and against which the association may not make any loans; and which fully paid reserve fund or permanent stock must at all times be at least (5%) per cent of the gross assets of the association, but not less than Twenty-five Thousand ($25,000.00) Dollars, but which shall not be required to exceed Two Hundred Fifty Thousand ($250,000.00) Dollars; provided that associations whose shares are insured by the Federal Savings and Loan Insurance Corporation may retire in whole or in part such reserve fund or permanent stock heretofore, issued, when such association is authorized to do so by a majority vote of its members, provided that the basis of such retirement shall have been approved by the Banking Commissioner of Texas, and provided further that no such association shall be authorized to retire its reserve fund or permanent stock until a consent to such retirement upon the part of the Federal

The Commissioner of Internal Revenue determined that for the years in question the sums transferred to the nonwithdrawable capital stock account were not properly deducted as funds transferred to a bad debt reserve and accordingly disallowed deductions to the extent of those sums.[2] The taxpayer paid the resulting deficiency and claimed a refund. The government disallowed the claim and this action followed. Judgment for the taxpayer was entered by the District Court. We reverse.

The District Court permitted the questioned deductions for all three years on the theory that the transfers to the nonwithdrawable capital stock account were the same as if credited to an account named "bad debt reserve." The transfers in question were from the association's undivided profits account. It was necessary that they be made to bring the nonwithdrawable capital stock account up to five percent of gross assets, the minimum level required of the taxpayer by Art. 881a–36(f). The taxpayer asserts that it also had other purposes for the transfers—to make the transferred funds available to absorb losses of the association, to prevent the amounts from being distributed as dividends, and to provide additional protection to the owners of withdrawable accounts. These are more accurately described as consequences of the transfer required by Texas statute. In any event, the fact remains that the transfers were necessitated by and made pursuant to the statute.

Under 26 U.S.C. §§ 166(c) and 593 a building and loan association may deduct annually an amount which is a reasonable addition to a reserve for bad debts instead of deducting worthless debts in the year in which they become worthless

in whole or in part. A taxpayer using the reserve method must, upon establishing the worthlessness of a particular debt, reduce the reserve account by a charge thereto in the amount of the actual loss. The reserve must be available for such reduction. When a bad debt charged against the reserve is subsequently collected the amount of the collection is treated as income in the year of collection.

### 1. Taxable Years 1961 and 1962

█ The statute does not specifically deal with the issue before us. Turning to the Regulations, they provide for a deduction, allowed to the association in this instance, for amounts credited to a "reserve for bad debts," 26 C.F.R. § 1.-593–1(a). The Regulations provide also that certain transfers other than those to a bad debt reserve "will be deemed to have been credited to the bad debt reserve," and it is on these provisions that the taxpayer relies.

> The establishment of such [bad debt] reserve and all adjustments made thereto must be reflected on the regular books of account of the institution at the close of the taxable year, or as soon as practicable thereafter. Minimum amounts credited in compliance with Federal or State statutes, regulations, or supervisory orders *to reserve or similar accounts*, or additional amounts credited to such reserve or similar accounts and permissive under such statutes, regulations, or orders, against which charges may be made for the purpose of absorbing losses sustained by an institution, *will be deemed to have been credited to the bad debt reserve.* (emphasis added)

26 C.F.R. § 1.593–1(c).[3] The taxpayer says the nonwithdrawable stock account

Savings and Loan Insurance Corporation has been filed in writing with the Banking Commissioner of Texas.

2. There is no contention that the total deductions claimed were excessive. The dispute is not over amounts but over the nature of the account to which the questioned transfers were made. Nor is

there any dispute over transfers made to the bad debt reserve account, for which deductions were claimed and allowed.

3. The taxpayer nowhere claims that the interpretive regulations here involved are invalid for lack of contemporaneity or consistency, so that the right of the

is a "reserve or similar account". The government says it is not.

■ An account must meet several requirements in order for transfers thereto to qualify for deductibility as transfers made to, or deemed to be made to, a bad debt reserve. Much more must be considered than the label put on the account. The account must be available to absorb losses from bad debts which actually become uncollectible during the year. This would seem to follow from the nature of the account itself and from the account's function as a substitute for deduction of debts as they are determined to be worthless. Bittker, *supra*, 285 (3d ed., 1964). Funds transferred to the account are available for restoration to ordinary income when the need for the reserve ends. West Seattle National Bank of Seattle v. Commissioner of Internal Revenue, 33 T.C. 341, 343 (1959), aff'd 288 F.2d 47 (9th Cir., 1961); Arcadia Savings & Loan Association v. Commissioner of Internal Revenue, 34 T.C. 679 (1960) aff'd 300 F.2d 247 (9th Cir., 1962). The privilege of deducting amounts for predicted bad debts before they are ascertained contemplates that the amounts are earmarked and are not to be used for any purpose other than to apply against bad debts as they occur, for any use for such an inconsistent purpose is under penalty of having restored to income the amount so used. Rio Grande Building & Loan

Association v. Commissioner of Internal Revenue, 36 T.C. 657 (1961). The nonwithdrawable capital stock account of taxpayer met none of these requirements.

■ Art. 881a–36(f) of the Texas statutes provided that the nonwithdrawable stock account could not be withdrawn "until after all liabilities of the association have been satisfied in full, including the full book value of all other types or classes of shares and share accounts." The government argues that this statute prohibited the reduction of the account to absorb losses from bad debts as they actually occur. The taxpayer asserts that despite the language of Art. 881–36(f) the account was available to meet bad debt losses because of other provisions of Texas law [4] which under some circumstances authorize the Banking Commissioner of Texas, on petition of a financially distressed association, to order a reduction of liability of the association to its members (other than juveniles). This contingent availability—contingent on financial distress, petition to the Commissioner, approval by the Commissioner, and applicable to distress arising from losses of any kind, is entirely unrelated to what a bad debt reserve is for and how it operates.

The nonwithdrawable capital stock account was not a reserve or similar account within the meaning of the Regulations in effect in 1961 and 1962.[5] *Rio*

government to rely on them is unquestioned. See Bittker, Federal Income Estate and Gift Taxation, 26 (3d Ed., 1964).

4. Tex.Rev.Civ.Stat.Ann. Art. 881a–56 (repealed in 1963).

5. The same conclusion is set out in Rev. Rul. 66–82:

The words "reserve or similar accounts," as used in section 1.593–7(a)(2)(ii) of the regulations, relate only to reserve accounts maintained on the books of account of the taxpayer for the purpose of absorbing losses. The permanent nonwithdrawable capital stock account of the taxpayer is not one of its "reserve or similar accounts," even though amounts appearing therein in excess of the paid-in amount of such stock represent a part of "surplus,

undivided profits, and reserves." All of the taxpayer's surplus; undivided profits, and reserves, as well as its capital are at the risk of the taxpayer's business, but it does not follow that the total amount thereof has been credited to a reserve for bad debts within the scope of section 593 of the Code.

Accordingly, the permanent nonwithdrawable capital stock account of the taxpayer is not a reserve or similar account within the meaning of section 1.593–7(a) of the regulations.

This refers to the Regulations in effect after the 1962 amendment to the statute, discussed *infra* in part 2 of this opinion. But both preamendment and postamendment Regulations are concerned with "reserve or similar accounts."

*Grande Building & Loan Association, supra,* and like holdings denying bad debt deductions for funds left in undivided profit accounts, do not, as contended by the taxpayer, establish as an overriding test for determining whether an account is similar to a bad debt reserve that the funds therein are not available for dividends and thus provide additional protection for depositors. Those authorities point out that funds left in an undivided profit account are available for other association uses, including dividends, and do not protect the depositors against bad debts. They do not promulgate a principle that once funds are removed from undivided profits and become unavailable for dividends the account into which transferred is, regardless of its nature and purpose, an account similar to a bad debt reserve.

## 2. Taxable Year 1963

The controlling statute was revised in 1962, effective for the year 1963.[6] Under the revised statute, 26 U.S.C. 593(c) (1), an association is required to maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. No deduction is allowed for additions to the supplemental reserve.

A corresponding change was made in the Regulations. Section 1.593–1(c) was replaced by 26 C.F.R. 1.593–5(b), 26 C. F.R. 1.593–7(a) (1) and (2) (i) & (ii). Under section 1.593–7(a) (1) the association is required to establish the described reserves. Section 1.593–7(a) (2) (ii) provides:

Minimum amounts credited in compliance with such Federal or State statutes, regulations, or supervisory orders *to reserve or similar accounts,* or additional amounts credited to *such reserve or similar accounts* and permissive under such statutes, regulations, or orders, against which charges may be made for the purpose of absorbing losses sustained by the taxpayer, *may also be credited to the reserve for losses on nonqualifying loans or the reserve for losses on qualifying real property loans,* provided that the total of the amounts so credited to the reserve for losses on nonqualifying loans, or to the reserve for losses on qualifying real property loans, for any taxable year does not exceed the amount determined under § 1.166–4 or § 1.593–6 as the addition to such reserve for such year. (emphasis added)

26 C.F.R. 1.593–7(a) (2) (ii).

█ The changes in the statute and the Regulations are concerned with more detailed accounting procedures than were formerly required. They do not change the substantive considerations of the nature and purpose of a bad debt reserve. The character of, and the restrictions on use of, the nonwithdrawable stock account are not transmuted by characterizing it as a sub-account of, and reconcilable with, the bad debt reserve account. If the funds in the nonwithdrawable capital account were in actuality a part of the bad debt reserve, then the association would not be in compliance with Texas law, because if sufficient bad debts were incurred the reserve would be depleted under conditions not allowed by Art. 881a–36(f). The taxpayer cannot have its cake and eat it too. The amended Regulation, quoted above, makes it perfectly clear that the bookkeeping tail may not wag the substantive dog. Amounts credited to "reserve or similar accounts" may be "credited" to bad debt reserves, instead of "deemed to have been credited" under

---

While we do not consider it determinative, or even entitled to significant weight, we do note that the secretary of the Association testified unequivocally that the association had never made a debit entry to the nonwithdrawable stock account, considered that it could not touch the account except in the event of bankruptcy or liquidation, and that bad debt losses could not be charged to the account.

6. Pub.L. No. 87–834, § 6(a) (Oct. 16, 1962), 76 Stat. 960.

the former Regulation. But the credit must have been, in the first instance, to a "reserve or similar account."

■■ The provision in the first sentence of subsection (ii) that credits and charges to the reserves must be made irrespective of whether the amount thereof is credited to any other account required or permitted by state law does not operate to make a sum part of the reserve in the first instance if it is not available to meet the purposes and fulfill the requirements of a reserve. And, as already pointed out, a sum carried in the bad debt reserve which meets the purposes and requirements of such a reserve does not also meet the requirements of Texas law that a sum be held in a nonwithdrawable capital stock account.

Reversed.