LEESBURG FEDERAL SAVINGS AND LOAN ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 299–69.   Filed December 2, 1970.

*Carroll v. McKinney*, for the petitioner.
*Clarence E. Barnes*, for the respondent.

The Commissioner determined the following deficiencies in petitioner's income tax:

| Year | Deficiency | Addition to tax; sec. 6651(a), I.R.C. 1954 |
|------|-----------|--------------------------------------------|
| 1965 | $22,885 | $1,145 |
| 1966 | 20,640 | |

The only question remaining for decision is whether, in each of the years in issue, petitioner has satisfied the accounting requirements of section 593, I.R.C. 1954, and the regulations promulgated thereunder, and is therefore entitled to deductions for additions made to its accounts for bad debt reserves.

### FINDINGS OF FACT

The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. No other evidence was presented.

During the years in question, Leesburg Federal Savings & Loan Association (hereinafter referred to as petitioner) was a domestic building and loan association within the meaning of section 593, I.R.C. 1954. It was organized under the laws of the State of Ohio and was incorporated in February 1884. At the date of the filing of the petition in this case, petitioner's principal office and place of business was at Leesburg, Ohio. It filed its corporate income tax returns (Form 1120) for the calendar years 1965 and 1966 with the district director of internal revenue, Cincinnati, Ohio. Petitioner was on the accrual basis of accounting.

On its tax return for the taxable year 1965 petitioner claimed a deduction of $47,678 for "Bad debts." Schedule F of petitioner's tax return disclosed that petitioner used the reserve method of accounting for bad debts and that it was for additions to these reserves for bad debts that petitioner claimed the deduction. Of the several supplements petitioner attached to its 1965 tax return, two were related to this

deduction for additions to its bad debt reserves. One ("Reconciliation of General Reserves") read as follows:

### LEESBURG FEDERAL SAVINGS AND LOAN ASSOCIATION
### LEESBURG, OHIO
Year ended December 31, 1965

RECONCILIATION OF GENERAL RESERVES

| Title | Supervisory reserves | | Bad debts charge off | 1965 Results | |
|---|---|---|---|---|---|
| | Federal insurance reserve | Balance, 1/1/65 | | Reserve allocation | Balance |
| I Nonqualifying loan reserve | | | | | |
| II Qualifying loan reserve | $223,461 | $223,461 | $3,669 | ¹ $50,857 | $270,649 |
| III Supplementary reserve | 199,019 | 199,019 | | | 199,019 |
| IV Pres-1952 reserve | 41,067 | 41,067 | | | 41,067 |
| | 463,547 | 463,547 | 3,669 | ¹ 50,857 | |
| Loss on sale of real estate | −3,669 | | | | |
| Allowable bad debt reduction [sic] | 47,678 | | | | |
| Excess transfer | 3,179 | | | | |
| Bal. 12/31/65 | 510,735 | | | | 510,735 |

¹ Includes $3,179 excess of Federal income tax bad debt deduction.

The above table represented that the petitioner transferred $47,678 to its "Qualifying Loan Reserve," for which it claimed a deduction (the word "reduction" in the table was obviously a typographical error, intended to be "deduction") for additions to bad debt reserves, along with an additional $3,179 for which no deduction was claimed. The other supplement to the 1965 tax return explained that the amount of the deduction for allocation to bad debt reserves for qualifying loans was computed as 60 percent of taxable income.

Schedule F—BAD DEBTS

Taxable income before deduction for bad debts and contributions, but after dividends-received deduction _____ $79,464
Bad debt deduction—60 percent thereof _____ 47,678

6 per cent of qualifying loans ($6,313,548) _____ $378,813
Less qualifying loan reserve at Dec. 31, 1964 _____ 223,461

   Maximum allowable deduction _____ 155,352

The petitioner did not claim a deduction in 1965 for any addition to a bad debt reserve for nonqualifying loans.

On its 1966 income tax return petitioner claimed $43,000 as a deduction for additions to its reserves for bad debts in a similar fashion as in 1965. The petitioner again attached supplements to its tax return. One of the supplements was to Schedule L–Balance Sheets of the tax form. It read:

# LEESBURG FEDERAL SAVINGS AND LOAN ASSOCIATION
## LEESBURG, OHIO
### Year ended December 31, 1966

SCHEDULE L, LINE 23—RECONCILIATION OF SUPERVISORY RESERVES AND FEDERAL INCOME TAX BAD DEBT RESERVES

| Title | Supervisory reserves | | 1966 Results | | |
|---|---|---|---|---|---|
| | Federal insurance reserve | Balance 1/1/66 | Bad debts chg'd off | Reserve additions | Balance 1/31/66 |
| I Nonqualifying loan reserve | 0 | 0 | 0 | 0 | 0 |
| II Qualifying loan reserve | 270,649 | 270,649 | | 43,000 | 313,649 |
| III Supplemental reserve | 199,019 | 199,019 | 0 | 0 | 199,019 |
| IV Pre-1952 reserve | 41,067 | 41,067 | 0 | 0 | 41,067 |
| V Spillover reserve | 0 | 0 | 0 | 0 | 0 |
| | 510,735 | 510,735 | | 43,000 | |
| Writeoff of improvement loans | | | | | |
| Loss on sale of real estate sold during 1966 that was acquired thru foreclosure after 12/31/1962 | | | | | |
| Current years additions to supervisory reserves | 43,000 | | | 43,000 | |
| Bal. 12/31/66 | 553,735 | | | | 553,735 |

Another supplement to the 1966 return explained how the amount of the deduction for the allocation to bad debt reserves for that year was obtained:

Schedule F—BAD DEBTS

| | | |
|---|---|---|
| Taxable Income before deductions for bad debts and contributions but after the dividends received deduction | $72,442 | |
| Bad deduction 60% thereof | 43,465 | |
| Bad debt deduction used | 43,000 | |
| 6% of qualifying loan reserve ($6,614,852) | | $396,891 |
| Less qualifying loan reserve at 12/31/65 | | 267,674 |
| Maximum allowable addition to loan reserve | | 129,217 |

As in 1965, petitioner computed the deduction for allocations to bad debt reserves for qualifying loans as 60 percent of taxable income.

The petitioner did not claim a deduction in 1966 for any addition to a bad debt reserve for nonqualifying loans.

It has been stipulated that, except for the information contained in its tax returns and the supplements thereto, the petitioner did not maintain a permanent subsidiary ledger or any other ledger for bad debt reserve accounts within the meaning of section 593, I.R.C. 1954, and the regulations under that section.

The record does not disclose whether complete copies of the tax returns were in fact retained by petitioner, or where they were kept if retained. However, the Commissioner has stipulated "if copies of

petitioner's tax returns for each year in issue are accepted by the Court as constituting a permanent part of petitioner's regular books of account, that said returns contain sufficient information therein to explain the bad debt deductions claimed as required by section 593 and the regulations promulgated thereunder."[1]

Further, the record fails to disclose which general ledger accounts, if any, controlled the alleged reserve accounts reflected on the tax returns. Nor is there any evidence as to the purposes for which such general ledger accounts, if any did exist, were used.

In his deficiency notice to the petitioner, the Commissioner disallowed the amounts deducted for additions made to bad debt reserves on the ground that the "amounts claimed were not reflected on the regular books of account as required by sections 166(c) and 593 of the Internal Revenue Code of 1954 and the regulations promulgated thereunder."

#### OPINION

RAUM, *Judge:* Petitioner, a domestic building and loan association within the meaning of section 593, I.R.C. 1954, claimed deductions on its income tax returns for 1965 and 1966 for additions made to bad debt reserves. The general statutory authority for the deduction for additions to bad debt reserves is granted by section 166(c), I.R.C. 1954.[2] Section 593, I.R.C. 1954, as it read before the Tax Reform Act of 1969, 83 Stat. 620-623,[3] prescribed both limitations on the amount of this deduction and also rules of reserve accounting, applicable to various financial institutions including domestic building and loan associations.[4]

---

[1] The stipulation makes clear, however, that the Commissioner "does not concede that copies of petitioner's tax returns for each year in issue constitute a permanent part of petitioner's regular books of account within the meaning of section 593 and the regulations promulgated thereunder."

[2] SEC. 166. BAD DEBTS.

  (a) GENERAL RULE.—

    (1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

    (2) PARTIALLY WORTHLESS DEBTS.—When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

\*    \*    \*    \*    \*    \*    \*

  (c) RESERVE FOR BAD DEBTS.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

[3] By sec. 432(e), Tax Reform Act of 1969, 83 Stat. 623, the amendments are effective for taxable years beginning after July 11, 1969, and therefore do not apply to the taxable years in this case.

[4] SEC. 593. RESERVES FOR LOSSES ON LOANS.

  (a) ORGANIZATIONS TO WHICH SECTION APPLIES.—This section shall apply to any mutual savings bank not having capital stock represented by shares, domestic building and loan association, or cooperative bank without capital stock organized and operated for mutual purposes and without profit.

  (b) ADDITION TO RESERVES FOR BAD DEBTS.—

    (1) IN GENERAL.—For purposes of section 166(c), the reasonable addition for

Petitioner's computation of the deductions claimed for additions to its reserves for bad debts for 1965 and 1966 is not in issue. The Commissioner concedes that there is sufficient information in the tax returns to explain the deductions claimed. The sole question in this case is whether the petitioner has met the accounting requirements set out by section 593 and the regulations.

Section 593(c) states that the taxpayer, which seeks to take advantage of the reserve method of accounting for bad debt deductions, "shall establish and maintain" three different loan reserves: A reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. Moreover, section 1.593-7(a) of the regulations relating to the accounting practices called for by section 593 of the Code provides as follows:

Sec. 1.593-7 Establishment and treatment of reserves for bad debts.—(a) *Establishment of reserves.*—(1) *In general.*—A taxpayer described in § 1.593-4 shall establish and maintain a reserve for losses on nonqualifying loans, a reserve for losses on qualifying real property loans, and, if required under paragraph (b)(4) or (c)(3)(i)(c) of this section, a supplemental reserve for losses on loans. For rules governing the crediting of additions to the reserve for losses on nonqualifying loans and the reserve for losses on qualifying real property loans, see paragraph (b) of § 1.593-5.

the taxable year to the reserve for bad debts of any taxpayer described in subsection (a) shall be an amount equal to the sum of—

(A) the amount determined under section 166(c) to be a reasonable addition to the reserve for losses on nonqualifying loans, plus

(B) the amount determined by the taxpayer to be a reasonable addition to the reserve for losses on qualifying real property loans, but such amount shall not exceed the amount determined under paragraph (2), (3), or (4), whichever amount is the largest, but the amount determined under this subparagraph shall in no case be greater than the larger of—

(i) the amount determined under paragraph (4), or

(ii) the amount which, when added to the amount determined under subparagraph (A), equals the amount by which 12 percent of the total deposits or withdrawable accounts of depositors of the taxpayer at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of such year (taking into account any portion thereof attributable to the period before the first taxable year beginning after December 31, 1951).

(2) PERCENTAGE OF TAXABLE INCOME METHOD.—The amount determined under this paragraph for the taxable year shall be the excess of—

(A) an amount equal to 60 percent of the taxable income for such year, over

(B) the amount referred to in paragraph (1)(A) for such year,

but the amount determined under this paragraph shall not exceed the amount necessary to increase the balance (as of the close of the taxable year) of the reserve for losses on qualifying real property loans to 6 percent of such loans outstanding at such time. * * *

　*　　*　　*　　*　　*　　*　　*

(c) TREATMENT OF RESERVES FOR BAD DEBTS.—

(1) ESTABLISHMENT OF RESERVES.—Each taxpayer described in subsection (a) which uses the reserve method of accounting for bad debts shall establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. For purposes of this title, such reserves shall be treated as reserves for bad debts, but no deduction shall be allowed for any addition to the supplemental reserve for losses on loans.

2. *Accounting for reserves.*—(i) The taxpayer shall establish and maintain as a permanent part of its regular books of account an account for each of the reserves established pursuant to subparagraph (1) of this paragraph. For purposes of the preceding sentence, a taxpayer may establish and maintain a permanent subsidiary ledger containing an account for each of such reserves. If a taxpayer maintains such a permanent subsidiary ledger, the total of the reserve accounts in such ledger and the total of the reserve accounts in any other ledger must be reconciled.

(ii) The credits and charges to each of the reserves established pursuant to subparagraph (1) of this paragraph must be made to such reserves irrespective of whether the amount thereof is also credited or charged to any surplus, reserve, or other account which the taxpayer may be required or permitted to maintain pursuant to any Federal or State statute, regulation, or supervisory order. * * *

Section 593 and the regulations call for strict compliance and continuing supervision and maintenance of reserve accounts by those who wish to take advantage of the reserve method of accounting for bad debts. *Commercial Savings & Loan Association*, 53 T.C. 14, 20–21.

Petitioner argues that it has met these requirements by maintaining copies of its tax returns for the years in question along with its permanent books of account. The regulations require that the reserve accounts be kept as a permanent part of the taxpayer's regular books of account or in a permanent subsidiary ledger. Sec. 1.593–7(a)(2), Income Tax Regs. The burden of proof is on the petitioner to show that its bad debt reserve accounts were a part of its permanent books. *Rio Grande Building & Loan Association*, 36 T.C. 657, 671. This the petitioner has failed to do. It has introduced no evidence, as distinguished from contention and argument, which points to the place where or the manner in which copies of its returns (i.e., its alleged records) were kept, or indeed whether complete copies of such records were in fact retained by it.

The stipulation of the parties states merely that "Petitioner *contends* that copies of its tax returns filed for each of said years were maintained as a part of its permanent books of account." (Emphasis supplied.) The burden of proof was upon petitioner, and we have no evidence that would enable us to find that copies of tax returns—even if they might otherwise qualify as part of the taxpayer's books of account—were retained as a permanent part of its books and records. There has been a failure of proof in this respect. Assertions or contentions of counsel, whether made on brief or in opening statements or in stipulations or otherwise, are not an acceptable substitute for proof.

But even if the petitioner had maintained copies of its tax returns as a permanent part of its records, we think this material would not satisfy the requirements of section 593 and the regulations relating to reserves and books of account. Reserve accounting for bad debt

losses and deductions for additions to bad debt reserves are regarded as tax "privileges." [5] *Rio Grande Building & Loan Association,* 36 T.C. 657, 663; *Newport Federal Savings & Loan Association* v. *United States,* 259 F. Supp. 82, 87 (E.D. Ark.); *Levelland Savings & Loan Association* v. *United States,* 421 F. 2d 243, 246 (C.A. 5). "Where the Congress has authorized certain tax privileges and has prescribed the conditions to be met in qualifying for them it has been held that strict compliance with the statute is necessary." *Commercial Savings & Loan Association,* 53 T.C. 14, 20–21. We think copies of tax returns, even with supplemental material, do not meet these requirements. We have so held in *Colorado County Federal Savings & Loan Association,* 36 T.C. 1167, affirmed per curiam 309 F. 2d 751 (C.A. 5).

In the *Colorado County* case, which arose under section 593 of the 1954 Code, before it was amended by Revenue Act of 1962 (see fn. 5 *supra*), the taxpayer noted and labeled on its tax return the amounts deducted and incorporated these amounts into balance sheets which were submitted with the tax returns. The amounts were shown on the balance sheets as reserves for tax purposes. In at least one of the two taxable years in question, the amount was also reflected on the work papers of the attorney who prepared the tax return. We said in that case (p. 1171):

A Federal savings and loan association such as petitioner is, may, with certain limitations not here pertinent, deduct amounts credited to a reserve for bad debts. However, the bad debt reserve and all adjustments thereto by reason of Treasury regulations must be reflected on that institution's regular books of account. The amounts so credited must be for the sole purpose of absorbing losses.

In the instant case petitioner did not record on its regular books of account. "Reserve for Tax Purposes" deducted in its 1954 income tax return and "Reserve for Losses—Tax Purposes" deducted in its 1955 income tax return. In petitioner's regular books of account as disclosed by the facts which were stipulated, the reserves described above were a part of the petitioner's surplus and undivided profits. Therefore, these reserves were not reflected on petitioner's regular books of account as the Treasury regulations require.

---

[5] The description of the deduction for additions to bad debt reserves as a "privilege" apparently has grown out of the history of the tax status of domestic building and loan associations. Prior to 1952, these financial institutions were tax exempt. The Revenue Act of 1951, 65 Stat. 490–491, sec. 313 amending secs. 101(4), 104(a), and 23(k)(1), I.R.C. 1939, made these domestic building and loan associations taxable and, at the same time, granted them a special deduction for additions made to their bad debt reserves. S. Rept. No. 781, 82d Cong., 1st Sess., p. 28 (1951); S. Rept. No. 781 (Part 2), 82d Cong., 1st Sess., p. 27 (1951). Like provisions were subsequently incorporated in sec. 593 of the 1954 Code. However, the deduction for additions to bad debt reserves proved so large that, in a review of sec. 593 in 1962, it was said that these financial institutions remained "virtually tax exempt since 1951." H. Rept. No. 1447, 87th Cong., 2d Sess., p. 32 (1962); S. Rept. No. 1881, 87th Cong., 2d Sess., p. 40 (1962). Sec. 6 of the Revenue Act of 1962, 76 Stat. 977–982, in its amendments to sec. 593 of the 1954 Code, attempted to limit the deduction for additions to bad debt reserves, which both the House and the Senate thought to be "unduly generous." H. Rept. No. 1447, 87th Cong., 2d Sess., p. 33 (1962); S. Rept. No. 1881, 87th Cong., 2d Sess., p. 41 (1962).

In the case before us, the petitioner has failed to show how the amounts attributed to reserves for bad debts on the supplements to its tax forms were carried on its general books of account.[6] The amounts are shown on the tax returns themselves under Schedule L—Balance Sheets. On the 1965 return the entry is on line 22 entitled "Surplus reserves"; on the 1966 return the entry is on a line typed in by petitioner entitled "Supervisory & Bad Debt Res." But these entries fail to show that the amounts in the reserves were not carried on the general books of account in a way which would violate their reserve status. We also note that section 593 as it applied to the taxpayer in *Colorado County* did not include the rigorous bookkeeping requirements that are a part of the section after the 1962 amendments.[7] *Levelland Savings & Loan Association* v. *United States*, 421 F. 2d 243, 247 (C.A. 5); Forer, "New Rulings Ease Bookkeeping Requirements of Savings and Loan Associations," 30 J. Taxation 190 (1969); H. Rept. No. 1447, 87th Cong., 2d Sess., pp. 32–38 (1962); S. Rept. No. 1881, 87th Cong., 2d Sess., pp. 40–50 (1962).

The bookkeeping requirements set out by the Code and by the regulations are intended to insure that the deduction is taken only for actual additions to *genuine* bad debt reserves. This was pointed out most recently in *Levelland Savings & Loan Association* v. *United States*, 421 F. 2d at 246, where the court said:

An account must meet several requirements in order for transfers thereto to qualify for deductibility as transfers made to, or deemed to be made to, a bad debt reserve. Much more must be considered than the label put on the account. The account must be available to absorb losses from bad debts which actually become uncollectible during the year. This would seem to follow from the nature of the account itself and from the account's function as a substitute for deduction of debts as they are determined to be worthless. * * * The privilege of deducting amounts for predicted bad debts before they are ascertained contemplates that the amounts are earmarked and are not to be used for any purpose other than to apply against bad debts as they occur, for any use for such an inconsistent purpose is under penalty of having restored to income the amount so used. * * *

Cf. *Arcadia Savings & Loan Association*, 34 T.C. 679, affirmed 300 F. 2d 247 (C.A. 9); *Citizens Federal Savings & Loan Association of Cleveland* v. *United States*, 290 F. 2d 932 (Ct. Cl.); sec. 593(f), I.R.C. 1954, as amended by sec. 6 of the Revenue Act of 1962; sec. 1.593–10,

---

[6] Cf. sec. 1.593–7(a)(2)(i).

[7] The regulation under sec. 593, I.R.C. 1954, 1956–2 C.B. 321, before the 1962 amendment read similarly to the current regulation:

SEC. 1.593–1 ADDITIONS TO RESERVE FOR BAD DEBTS

(c) *Adjustments to reserve.*—Bad debt losses sustained during the taxable year shall be charged against the bad debt reserve. Recoveries of debts charged against the bad debt reserve during a prior taxable year in which the institution was subject to tax under this chapter or under chapter 1 of the Internal Revenue Code of 1939 shall be credited to the bad debt reserve. The establishment of such reserve and all adjustments made thereto must be reflected on the regular books of account of the institution at the close of the taxable year, or as soon as practicable thereafter. * * *

Income Tax Regs. The legislative history similarly demonstrates that the status of the reserves must be maintained inviolate.[8] The deduction, then, is permitted only when the reserve is used for the sole purpose of absorbing bad debt losses. *Levelland Savings & Loan Association* v. *United States, supra; Rio Grande Building & Loan Association*, 36 T.C. at 663; *Colorado County Federal Savings & Loan Association*, 36 T.C. at 1171. The Commissioner is charged with allowing the deduction for additions to bad debt reserves only where such reserves, in fact, exist. If the reserves have never been set up, or if once set up they are used for purposes which destroy their status as reserve accounts, then the deduction cannot be allowed.

It is for this reason that we think the petitioner has put too much reliance on the stipulation that the tax returns for the years in question "contain sufficient information therein to explain the bad debt deductions claimed as required by section 593 and the regulations promulgated thereunder." The accounting requirements, which the Code and the regulations make a condition for taking the deduction for additions to bad debt reserves, serve many purposes, one of which is certainly a correct determination of the amount deducted in a given taxable year. But there are others. Earmarking of these accounts also insures that they continue to be what they seem: bad debt reserves. *Levelland Savings & Loan Association* v. *United States*, 421 F. 2d at 246; *Rio Grande Building & Loan Association*, 36 T.C. at 663. See also H. Rept. No. 1447, 87th Cong., 2d Sess., p. 34 (1962); S. Rept. No 1881, 87th Cong., 2d Sess., p. 45 (1962). "There is, therefore, more than merely a bookkeeping entry involved in the instant case." *Rio Grande Building & Loan Association*, 36 T.C. at 667.

The petitioner argues that the taxpayer in *Colorado County Federal Savings & Loan Association* was denied the deduction because it failed to establish, and make adjustments to, a bad debt reserve within a reasonable time after the close of the taxable years in which the deductions for additions to a bad debt reserve had been taken. Petitioner points out that the "fact that the Bad Debt Reserves account was set forth on its tax return [sic] for the respective years involved is absolute proof of their [sic] compliance with the regulations as to time." We think this argument cannot succeed. The question of the time when the taxpayer finally complied with the accounting requirements of section 593 arose in *Colorado County Federal Savings & Loan Association* only because it attempted to remedy its defective bookkeeping by a resolution of its board 2½ and 1½ years after the taxable years in question. In that case, the court held first that the

---

[8] "[A]ny charge to any such reserve for an item other than a bad debt will result in the inclusion in gross income of an amount equal to such charge." H. Rept. No. 1447, 87th Cong., 2d Sess., pp. 34 and A44 (1962); S. Rept. No. 1881, 87th Cong., 2d Sess., p. 45 (1962).

taxpayer's tax returns, even with the supplements thereto, did not meet the requirements of section 593.[9] It was only after it decided that the taxpayer's bookkeeping was defective that the court reached the issue of the timeliness of the board's resolution.

The only authority which petitioner cites in support of its position is *Cudahy Packing Co.* v. *United States*, 15 F. 2d 133 (C.A. 7), a case arising under section 402 of the Packers and Stockyards Act, 1921, 42 Stat. 168. There seemed to be involved in that case a question as to whether "books of accounts" and "records" fell within the meaning of "documentary evidence" as that term is used in section 9 of the Federal Trade Commission Act, 38 Stat. 722–723, incorporated into the Packers and Stockyards Act by section 402. We think petitioner's reliance on this case is misplaced. It has little relevance to a problem like the one before us now.

*Decision will be entered for the respondent.*

___

[9] The petitioner seeks also to distinguish *Rio Grande Building & Loan Association*, 36 T.C. 657 ; *Newport Federal Savings & Loan Association* v. *United States*, 259 F. Supp. 82 (E.D. Ark.), and *Commercial Savings & Loan Association*, 53 T.C. 14, as dealing with situations where the taxpayers failed to meet the accounting requirements of sec. 593 and the regulations within a reasonable amount of time. But we rely on these cases only insofar as they deal with the general relationship between the deduction allowed to taxpayers using the reserve method of accounting for bad debts and their concomitant accounting obligations.