OHIO PIKE SAVINGS AND LOAN COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 649–69. Filed December 2, 1970.

*Cedric Vogel,* for the petitioner.
*Clarence E. Barnes,* for the respondent.

The Commissioner determined a deficiency of $241.95 in petitioner's income tax for the calendar year 1964. He disallowed several deduc-

---

tions, including the deduction for additions to bad debt reserves, claimed by the petitioner for the taxable year in issue. These adjustments had the effect of increasing petitioner's taxable income for that year. The only question remaining for decision is whether section 1.593–5(b)(2), Income Tax Regs., permits the petitioner to credit part of this increase in its taxable income to its bad debt reserves, and thereby claim a deduction under section 593, I.R.C. 1954.

### FINDINGS OF FACT

The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference.

During the taxable year in question Ohio Pike Savings & Loan Co. (hereinafter referred to as petitioner) was a domestic building and loan association within the meaning section 593, I.R.C. 1954. Petitioner was organized under the laws of the State of Ohio. It was incorporated in September 1958. At the date of the filing of the petition in this case, petitioner's principal office and place of business was at Tobasco, Clermont County, Ohio. It filed its corporate income tax return (Form 1120) for the calendar year 1964 with the district director of internal revenue, Cincinnati, Ohio. Petitioner was on the cash basis of accounting.

On its tax return for 1964 petitioner reported taxable income of $733.18 on which it paid income tax of $161.70.[1] In computing its taxable income for the year in issue, petitioner claimed the following deductions which were subsequently disallowed by the Commissioner.

| | |
|---|---|
| Depreciation on real estate owned | $2,697.79 |
| Intangible tax | 2,014.45 |
| Attorney fees paid | 695.90 |
| Foreclosure cost | 126.15 |
| Net losses | 16.41 |
| **Total** | 5,550.70 |

An additional tax of $1,220.75 was due when the total amount of these deductions, $5,550.70, was restored to income. On September 11, 1968, petitioner executed a "Waiver Of Restrictions On Assessment

---

[1] This amount, $161.70, was stipulated by the parties as the amount of tax *paid*. But line 33 of petitioner's tax form stated that the "TAX DUE" was $571.88 and the return was stamped "REC'D. WITH REMITTANCE" by the district director of internal revenue. The figure of $571.88 was the result of an erroneous computation by petitioner in Schedule J.—Tax Computation of its tax return. The 22-percent tax on taxable income of $733.18 was $161.30 (not, incidentally, $161.70 which was stipulated by the parties as the amount paid). Instead of carrying over this amount, $161.30, to line 31 ("TOTAL income tax") of its tax form, petitioner subtracted $161.30 from its taxable income of $733.18 and carried over the remainder of $571.88. The record does not disclose any explanation of these disparities.

And Collection Of Deficiency In Tax" (Form 870), and paid the additional tax of $1,220.75 thereunder.

In addition to the above-listed deductions, petitioner claimed a deduction of $1,099.77 for bad debts. Schedule F of petitioner's tax return disclosed that petitioner used the reserve method of accounting for bad debts and that it was for additions to these reserves for bad debts that petitioner claimed this deduction. Schedule F read as follows:

YEAR—1964

Schedule F.—RESERVE METHOD

| | Nonqualifying reserve | Qualifying reserves | Supplemental reserves |
|---|---|---|---|
| Reserve for nonqualifying loans_____ | 0 | | |
| Reserve for qualifying loans_____ | | [2] $74,999.84 | $64,300.82 |
| Reserve for supplemental 60 percent of 1964 taxable income ($1,832.95) _____ | | [2] —1,099.77 | |
| Balance Jan. 1, 1965_____ | | [2] 73,900.07 | 64,300.82 |

As is shown in Schedule F, the amount of the deduction for allocations to bad debt reserves for qualifying loans was computed as 60 percent of taxable income.

The petitioner did not claim a deduction in 1964 for any addition to a bad debt reserve for nonqualifying loans.

During the taxable year in question the petitioner maintained three different reserve accounts for bad debts on its general ledger. The reserve accounts were: (1) A general reserve for bad debts, (2) a qualifying loan reserve for bad debts, and (3) a supplemental reserve for bad debts. Petitioner did not make any credits for 1964 to either its general ledger account for the qualifying loan reserve or its general ledger account for the supplemental reserve. There was, however, an "entry" of $600 to the general ledger account for the general reserve for bad debts, but the record does not disclose the nature of this entry.

Furthermore, the record does not disclose to what accounts on its general ledger, if any, petitioner credited the amounts said to be allocated to bad debt reserves in Schedule F of its tax return for 1964. Nor is it shown for what purposes these accounts, if any did exist, were used.

The balance sheet submitted as a part of petitioner's 1964 tax return read as follows:

---

[2] Since petitioner *subtracted* from its qualifying loan reserve for bad debts the $1,099.77 deducted from taxable income as an *addition* to bad debt reserves, it would appear that the amount was charged and not credited to the reserve.

*January 1, 1965*

| Assets | | Capital and reserves | |
|---|---|---|---|
| First mortgages on real estate | $2,462,963.45 | Deposits | $2,805,438.09 |
| Cash | 195,184.94 | Advance payments by borrowers for | |
| Loans on deposits | 2,700.00 | taxes and insurance | 22,828.05 |
| U.S. Government bonds | 96,487.50 | Unapplied mortgage credits | 1,963.61 |
| Real estate owned (less depreciation) | 256,806.39 | Accrued taxes | 1,751.81 |
| Real estate sold on contract | 16,184.95 | Running stock | 100.00 |
| Ohio Deposit Guarantee Fund | 55,500.00 | Retirement fund | 15,000.00 |
| Other bonds | 300.00 | Other liabilities | 55.00 |
| Furniture and fixtures (less depreciation) | 3,086.56 | Reserves: | |
| | | Legal | 139,900.66 |
| | | Credits to future operations | 25,068.91 |
| | | Permanent stock | 60,750.00 |
| | | Undivided profits | 16,357.66 |
| | 3,089,213.79 | | 3,089,213.79 |

The balance sheet carried an entry of $139,900.66 under "Legal" reserves. The total balance of the bad debt reserves shown in Schedule F, as of January 1, 1965, was $138,200.89.

In his deficiency notice to the petitioner, the Commissioner disallowed the amounts deducted for additions made to bad debt reserves. The Commissioner stated therein:

It is determined that the deduction for bad debts on the reserve method in the amount of $1,099.77, claimed in the 1964 income tax return is unallowable. The amount claimed was not reflected on the regular books of account as required by sections 166(c) and 593 of the Internal Revenue Code of 1954 and the regulations promulgated thereunder.

The issue raised at the Appellate hearing requesting a deduction for bad debts in an amount equal to 60 percent of corrected taxable income after taking into account certain agreed adjustments has been given careful consideration and it has been determined that such deduction is unallowable since no amount was initially credited to the proper reserves as required by section 593 of the Code. * * *

Based on the contention that it may make such a subsequent adjustment credit to its bad debt reserves, petitioner claims a refund from the $1,220.75 paid under the September 11, 1968, "Waiver Of Restrictions On Assessment And Collection."

### OPINION

RAUM, *Judge:* Petitioner, a domestic building and loan association within the meaning of section 593, I.R.C. 1954,[3] used the reserve method of accounting for bad debts. On its 1964 return, it claimed various deductions (unrelated to bad debts) in the aggregate amount

[3] SEC. 593. RESERVES FOR LOSSES ON LOANS.

(a) ORGANIZATIONS TO WHICH SECTION APPLIES.—This section shall apply to any mutual savings bank not having capital stock represented by shares, domestic building

of $5,550.70, which the Commissioner disallowed. Petitioner did not dispute that disallowance and, in fact, paid that portion of the deficiency ($1,220.75) attributable to the disallowance of such deductions. In addition to those items petitioner claimed a deduction of $1,099.77 on its return as an addition to its "Qualifying reserves" for bad debts. The record discloses that petitioner in fact never made any such addition to the reserves on its books, and the Commissioner therefore disallowed the deduction. It is clear that the Commissioner's action in this respect was correct since section 1.593–5(b)(1) of the regulations requires that the addition to the reserves must be credited "by the close of the taxable year, or as soon as practicable thereafter." Although petitioner initially contested the disallowance of the $1,099.77 deduction in its petition filed herein, it has since abandoned its objection to that adjustment. The only matter now in dispute is whether, as a consequence of the increase in its "taxable income" by the amounts of the disallowance of the foregoing deduc-

___

and loan association, or cooperative bank without capital stock organized and operated for mutual purposes and without profit.

    (b) ADDITION TO RESERVES FOR BAD DEBTS.—

        (1) IN GENERAL.—For purposes of section 166(c), the reasonable addition for the taxable year to the reserve for bad debts of any taxpayer described in subsection (a) shall be an amount equal to the sum of—

            (A) the amount determined under section 166(c) to be a reasonable addition to the reserve for losses on nonqualifying loans, plus

            (B) the amount determined by the taxpayer to be a reasonable addition to the reserve for losses on qualifying real property loans, but such amount shall not exceed the amount determined under paragraph (2), (3), or (4), whichever amount is the largest, but the amount determined under this subparagraph shall in no case be greater than the larger of—

                (i) the amount determined under paragraph (4), or

                (ii) the amount which, when added to the amount determined under subparagraph (A), equals the amount by which 12 percent of the total deposits or withdrawable accounts of depositors of the taxpayer at the close of such year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of such year (taking into account any portion thereof attributable to the period before the first taxable year beginning after December 31, 1951).

        (2) PERCENTAGE OF TAXABLE INCOME METHOD.—The amount determined under this paragraph for the taxable year shall be the excess of—

            (A) an amount equal to 60 percent of the taxable income for such year, over

            (B) the amount referred to in paragraph (1)(A) for such year,

but the amount determined under this paragraph shall not exceed the amount necessary to increase the balance (as of the close of the taxable year) of the reserve for losses on qualifying real property loans to 6 percent of such loans outstanding at such time. * * *

    *        *        *        *        *        *        *

    (c) TREATMENT OF RESERVES FOR BAD DEBTS.—

        (1) ESTABLISHMENT OF RESERVES.—Each taxpayer described in subsection (a) which uses the reserve method of accounting for bad debts shall establish and maintain a reserve for losses on qualifying real property loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. For purposes of this title, such reserves shall be treated as reserves for bad debts, but no deduction shall be allowed for any addition to the supplemental reserve for losses on loans.

Although these provisions were amended by the Tax Reform Act of 1969, 83 Stat. 623, sec. 432(e) of that Act provides that the amendments are effective only for taxable years beginning after July 11, 1969.

tions ($5,550.70 and $1,099.77),[4] section 1.593–5(b)(2) of the regulations[5] permits the taxpayer to recompute its deduction for additions to its reserves (measured by a percentage of that increase in its taxable income). We hold that since the original deduction for addition to the reserves was fatally defective, petitioner is not entitled to a deduction for "subsequent adjustments."

The underlying assumption of section 1.593–5(b)(2) is that there was initially a valid addition to the reserves and that a subsequent adjustment in the taxpayer's taxable income may permit or require that there be a corresponding increase or decrease in the amount of that addition. It was clearly never the purpose of the regulations to permit a taxpayer to pull itself up by its bootstraps and obtain a deduction for an addition to its reserves where there has been a fatal failure to comply with the accounting requirements of the statute and regulations in the first place. The language of the regulations is clear enough: It provides that where an adjustment has the effect of permitting an increase or requiring a reduction in the amount claimed on the return as an addition to the reserve, "then *the amount initially credited* to such reserve for such year pursuant to subparagraph (1) of this paragraph may have to be increased or decreased, as the case may be, to the extent necessary to reflect such adjustment." (Emphasis supplied.) Obviously, the words "initially credited" contemplate that the amounts were *properly* credited in the first instance; and unless an addition to the reserve has been properly credited, there is no basis upon which to compute an upward revision of such addition.

Section 593(c) sets out the accounting requirements of the statute. It states that a taxpayer which seeks to take advantage of the reserve method of accounting for bad debts "shall establish and maintain" three different reserves: A reserve for losses on qualifying real prop-

---

[4] Although the stipulation of facts appears to limit petitioner's position to the consequences of the disallowance of the items totaling $5,550.70, its contentions on brief embrace the $1,099.77 item as well.

[5] Sec. 1.593–5  Addition to reserves for bad debts.

(a) *Amount of addition.* As an alternative to a deduction from gross income under section 166(a) for specific debts which become worthless in whole or in part, a taxpayer described in § 1.593–4 is allowed a deduction under section 166(c) for a reasonable addition to a reserve for bad debts. * * *

(b) *Crediting to reserves required.*—(1) *In general.*—The amounts referred to in paragraph (a)(1) and (2) of this section must be credited, respectively, to the reserve for losses on nonqualifying loans and to the reserve for losses on qualifying real property loans by the close of the taxable year, or as soon as practicable thereafter. For rules with respect to accounting for such reserves see paragraph (a)(2) of § 1.593–7.

(2) *Subsequent adjustments.* If an adjustment with respect to the income tax return for a taxable year is made, and if such adjustment (whether initiated by the taxpayer or the Commissioner) has the effect of permitting an increase, or requiring a reduction, in the amount claimed on such return as an addition to the reserve for losses on nonqualifying loans or to the reserve for losses on qualifying real property loans, then the amount initially credited to such reserve for such year pursuant to subparagraph (1) of this paragraph may have to be increased or decreased, as the case may be, to the extent necessary to reflect such adjustment.

erty loans, a reserve for losses on nonqualifying loans, and a supplemental reserve for losses on loans. In implementing these provisions, section 1.593-7(a), Income Tax Regs., requires that accounts for the bad debt reserves established in accordance with section 593(c) be set up and maintained as a permanent part of the taxpayer's regular books of account or in a permanent subsidiary ledger.[6] These accounting requirements are rigid conditions, and the reasons therefor were outlined in *Leesburg Federal Savings & Loan Association*, 55 T.C. 378, 386-387,[7] decided this day. Moreover, as already noted, section 1.593-5(b) requires that the additions to the reserves be credited by the close of the taxable year or as soon as practicable thereafter. Indeed, failure to make timely additions to the reserves has been regarded as fatal, regardless of whether deductions would otherwise have been permissible. Cf. *Commercial Savings & Loan Association*, 53 T.C. 14; *Rio Grande Building & Loan Association*, 36 T.C. 657; *Colorado County Federal Savings & Loan Association*, 36 T.C. 1167, affirmed per curiam 309 F. 2d 751 (C.A. 5).

Petitioner does not contend that it fulfilled the accounting requirements of the Code and regulations, and the record affirmatively establishes that it did not do so. It therefore could not rightfully have claimed any deduction on its returns for any addition to its reserves. The requirements of the statute and regulations were designed to insure that the deduction is taken only for actual additions to genuine bad debt reserves, see *Leesburg Federal Savings & Loan Association*, 55 T.C. at 386-387, and failure to comply with those requirements is decisive against the taxpayer. Section 1.593-5(b)(2) of the regulations is merely a limited exception to those requirements, and we think it clearly presupposes compliance with the statute and regulations in all other respects. Thus, a taxpayer that desires to invoke the authority for an upward revision of the amount initially credited to its reserves must first have complied with the requirements of the statute and regulations in respect of the addition that is sought to be revised.

---

[6] Sec. 1.593-7 Establishment and treatment of reserves for bad debts.

(a) *Establishment of reserves.*—(1) *In general.*—A taxpayer described in § 1.593-4 shall establish and maintain a reserve for losses on nonqualifying loans, a reserve for losses on qualifying real property loans, and, if required under paragraph (b)(4) or (c)(3)(i)(c) of this section, a supplemental reserve for losses on loans. For rules governing the crediting of additions to the reserve for losses on nonqualifying loans and the reserve for losses on qualifying real property loans, see paragraph (b) of § 1.593-5.

(2) *Accounting for reserves.* (i) The taxpayer shall establish and maintain as a permanent part of its regular books of account an account for each of the reserves established pursuant to subparagraph (1) of this paragraph. For purposes of the preceding sentence, a taxpayer may establish and maintain a permanent subsidiary ledger containing an account for each of such reserves. If a taxpayer maintains such a permanent subsidiary ledger, the total of the reserve accounts in such ledger and the total of the reserve accounts in any other ledger must be reconciled.

[7] Petitioner does not here raise the issue presented in *Leesburg* whether the mere filing of income tax returns claiming the deduction for additions to the reserve and retention of copies thereof are sufficient to satisfy the accounting requirements of the statute and regulations.

Petitioner argues that its case is indistinguishable from one in which a taxpayer makes no additions to bad debt reserves because no taxable income is reported from which to deduct any amount for such additions. If it should occur at a later date there was, in fact, taxable income in that year, petitioner argues, a subsequent adjustment would be allowed under section 1.593–5(b)(2), Income Tax Regs. But this simply is not petitioner's case. The Code and the regulations formulate a comprehensive scheme of reserve accounting for bad debts. The taxpayer that wishes to take advantage of reserve accounting for bad debts must adhere to all the rules of the scheme. This petitioner clearly has not done.

*Decision will be entered for the respondent.*